CHARLES COBB VAN RIPER, executor, &c., complainant, respondent and appellant,

*v.*

ELIZABETH A. WICKERSHAM, defendant, appellant and respondent.

[Argued November 26th, 1909.   Decided June 20th, 1910.]

1. It is the uniform rule in this state to decline to decree specific performance where reasonable doubt concerning the title exists, though rested on grounds merely debatable, but which might visit upon the purchaser litigation in that regard, and that too, where at law, the title might in fact be declared good.

2. When the vendor in a suit for specific performance by reason of the silence or the conduct of the vendee regarding the title to be conveyed during the negotiations or in the progress of the cause, has lost an oppor-

tunity to perfect his title before decree, this opportunity will still be afforded to him by the allowance of a reasonable time, even after the entry of the decree, if it can be done without hardship to the vendee.

On cross-appeals from a decree of the court of chancery, advised by Vice-Chancellor Leaming.

These are cross-appeals from a decree of the chancellor for specific performance, advised by Vice-Chancellor Leaming. The bill is filed by Charles Cobb Van Riper, executor and trustee under the last will and testament of Joseph A. Seffarlen, deceased, and is founded upon an agreement dated October 7th, 1907, whereby the executor agreed to sell and convey certain premises in Atlantic City to Elizabeth A. Wickersham. This instrument provided that the premises to be conveyed should be clear of encumbrances and the title good and marketable; that the settlement should be made within thirty days after authority of a court shall have been obtained authorizing the sale, time to be the essence of the agreement. The agreement was executed upon the express condition that the proper court having jurisdiction should authorize the sale to be made, the vendor covenanting that he would with due diligence apply to the court to make the sale. A peculiar provision of the will of the testator gave rise to the covenant inserted in the agreement regarding the application to the court for authority to sell. The testator's will provided as follows:

"I also give to my said daughter, Mary Regina C. McCloskey, the right and privilege to occupy my cottage at Atlantic City, New Jersey, which is used by me principally as a summer residence, without any charge for rent, taxes or water rent, and if she desires to so occupy the said property she may do so during the term of her natural life and during her occupancy of said property my executors and trustees are authorized to keep it in good order and repair, to pay all taxes, water rent and charges thereon as they shall periodically fall due.

"Second. I also give my daughter, Laura Agnes Seffarlen, the same right and privilege to occupy my aforesaid Atlantic City Cottage and to share the same with Mary Emma Rothenberger during the term of the natural lives of both the said Laura Agnes Seffarlen and Mary Emma Rothenberger and the same benefits and advantages that I have given my said daughter Mary Regina C. McCloskey regarding the said cottage are also given to my said daughter Laura Agnes Seffarlen and the said Mary

Emma Rothenberger. And I direct my executors and trustees to permit the said Mary Emma Rothenberger to take care and full charge of my said daughter Laura, and if my daughter Mary Regina C. McCloskey does not desire to occupy the Atlantic City Cottages during the winter months, it is my wish and desire that my daughter Laura Agnes Seffarlen and Mary Emma Rothenberger, shall occupy the same, and whatever costs and expenses are necessary for the proper care, keep and comfort of my daughter Laura, shall be paid by my trustees as a primary charge out of the income of my residuary estate.

"And if neither of my said daughters desire to occupy my Atlantic City cottage, my executors and trustees are directed not to rent it, but they are authorized and directed to sell the cottage at public or private sale under the general power of sale of my real estate, hereinafter delegated to them."

The executors and trustees under the will were made guardians of the estate of the testator's daughter Laura, who was of feeble mind, and the will further directed

"And I hereby authorize and direct my said trustee to see that the comfort of my said daughter Laura Agnes Seffarlen, is in every way provided for so long as she shall live, and I direct that they employ proper persons for that purpose, preferably my trusted servant Mary E. Rothenberger, and if necessary other persons under them and that they make liberal compensation out of said income for that purpose."

All the parties to the contract had notice that Laura was of feeble mind and incompetent to express a desire not to occupy the premises. Therefore the complainant, in pursuance of the provision in the agreement, filed his bill on January 23d, 1908, but did not make Mary Emma Rothenberger a party defendant thereto. On the eleventh day of May in the same year a decree was entered in said cause which, after reciting that in the opinion of the chancellor the said Laura Agnes Seffarlen was not mentally competent to express her desire not longer to occupy said premises, and the court being of the opinion that it is for her best interests that the agreement should be performed and the sale *consummated,* adjudged that Mary Regina C. McCloskey does not desire longer to occupy said premises, and that said Laura Agnes Seffarlen is not mentally competent to express her desire in the premises, and that the executor and trustee under the will be and is authorized and directed to sell the premises under the terms of said agreement and that the purchaser need not look to the application of the purchase-money.

A deed was prepared and tendered to the vendee on July 7th, 1908, within thirty days after the decree, but was refused by her. The defendant did not object to accepting the deed because of any alleged outstanding interest of Mary Emma Rothenberger in the premises, but solely because due diligence in procuring the above mentioned decree authorizing the sale had not been used, and of laches in tendering the deed.

This bill was filed July 22d, 1908. The defendant filed her answer thereto September 18th following, in which she admitted the tender of the deed and her refusal to perform, basing such refusal upon the delay by the complainant in instituting suit for authority to make sale of the premises, because time was of the essence of the agreement. The cause came on for hearing on December 30th, 1908, when the defendant asked leave upon affidavits to amend her answer by setting up therein that the title as tendered to her was not good and marketable, because Mary Emma Rothenberger had not been made a party defendant in the proceedings in the court of chancery to obtain leave to sell the premises and her rights were in no way affected by such proceedings; that she did not join in the deed tendered and that she, under the will of Joseph A. Seffarlen, had an outstanding interest in the premises. Leave was given, and such answer was immediately filed. The vice-chancellor rendered his decision at the conclusion of the hearing on the same day, and a decree thereon was entered January 13th, 1909, ordering specific performance of the agreement, and that the complainant within thirty days from the date of the decree deliver a good and sufficient conveyance to the defendant, and, if the defendant require it, cause a deed of release of any interest which Mary Emma Rothenberger might have in the premises to be executed by her releasing to the defendant such interest and deliver the release to the defendant contemporaneously with the conveyance.

From this decree cross-appeals were taken; by the complainant from that part of the decree adjudging that the complainant procure a release from Mary Emma Rothenberger on the ground that Mary Emma Rothenberger possessed no interest in the premises; and by the defendant because the complainant was not entitled to have the agreement specifically performed by

reason of his delay in acquiring authority from the court to make the conveyance and by reason of his not tendering a marketable title prior to the filing of his bill, and that the defendant was entitled to have the bill dismissed upon the pleadings and proofs.

*Mr. S. Stanger Iszard,* for the complainant.

*Messrs. Grey & Archer,* for the defendant.

The opinion of the court was delivered by

VOORHEES, J.

Whether the complainant was in laches in procuring the authority from the court of chancery to make the conveyance under the will was a question of fact. Between the execution of the agreement and the filing of the bill the defendant consulted a conveyancer in Philadelphia, who in turn consulted a title company, and in October notified the complainant that a commission in lunacy for Laura and the appointment of a guardian would be required by the title company. The complainant was not willing to take proceedings of that character, which would consume more time, and New Jersey counsel was called in, advising that such proceedings were not necessary, and thereupon took up the matter with the title company selected by the defendant, and finally reached an understanding some time in December with the title company that the proceedings, as they were finally taken, should be commenced.

We agree with the conclusion of the vice-chancellor that the complainant was reasonably diligent, and is not chargeable with laches in the commencement of those proceedings under the circumstances evinced by the proofs.

That being admitted, it follows that the tender of the deed was within the time prescribed by the contract, namely, within thirty days after the decree was entered in the court of chancery.

The next question to be determined relates to the title tendered, whether it was unmarketable because of a possible interest outstanding in Mary Emma Rothenberger.

The principle adopted by courts of equity in matters of specific performance is that they will not compel a purchaser to take a title of which there is a reasonable doubt, and such doubt is held to exist if the purchaser, desiring to sell the lands, would be adversely affected by such doubt. *Fry Spec. Perf. ch. 17.*

Professor Pomeroy, in his work on *Specific Performance* (at § *198*), says:

"In suits by a vendor the purchaser will not be forced to complete the contract unless the title is free from reasonable doubt. * * * If, however, there arises a reasonable doubt concerning the title, the court, without deciding the question, regards its existence as a sufficient reason for not compelling the purchaser to carry out the agreement."

So it is the uniform rule in this state to decline to decree performance where such doubt exists, though rested on grounds merely debatable, but which might visit upon the purchaser litigation in that regard, and that too where at law the title might in fact be declared good. The following cases are in point: *Vreeland* v. *Blauvelt, 23 N. J. Eq. (8 C. E. Gr.) 483;* Dobbs v. *Norcross, 24 N. J. Eq. (9 C. E. Gr.) 327; Tillotson* v. *Gesner, 33 N. J. Eq. (6 Stew.) 313; Cornell* v. *Andrew, 35 N. J. Eq. (8 Stew.) 7; S. C., 36 N. J. Eq. (9 Stew.) 321; Paulmier* v. *Howland, 49 N. J. Eq. (4 Dick.) 364; Lippincott* v. *Wikoff, 54 N. J. Eq. (9 Dick.) 107; Day* v. *Kingsland, 57 N. J. Eq. (12 Dick.) 134.*

We agree with the learned vice-chancellor that the objection raised to the title tendered should be decided in favor of the vendee.

The decree below allowed to the complainant thirty days in which to procure the release of the alleged outstanding interest and to tender it within that time, together with the executor's deed. While this allowance of time is not made a specific ground of appeal by the defendant, yet the point has been argued.

The complainant, however, alleges as ground of appeal that he should not be compelled to obtain the release of Mary Emma Rothenberger. A material allegation of the bill is that the complainant executed and tendered to the defendant a good and valid deed of conveyance and that the complainant was ready and

willing to deliver a good and valid conveyance in accordance with the agreement.

In her original answer the defendant admits the tender made to her of the deed mentioned by the complainant and her refusal to accept is placed, not upon the ground that the title thus offered was unmarketable, but because of the laches of the complainant in making the tender. This ground is set out in the answer with extreme minuteness. If the defendant did not thus, by failing to answer the material allegation of the tender of a good title, confess that fact (*Sanborn* v. *Adair, 29 N. J. Eq.* (*2 Stew.*) *338; Lee* v. *Stiger, 30 N. J. Eq.* (*3 Stew.*) *610; Jones* v. *Knauss, 31 N. J. Eq.* (*4 Stew.*) *609; Pinnell* v. *Boyd, 33 N. J. Eq.* (*6 Stew.*) *190; Halsey* v. *Ball, 36 N. J. Eq.* (*9 Stew.*) *161; Heyde* v. *Ehlers, 10 N. J. Eq.* (*2 Stock.*) *283; Tate* v. *Field, 56 N. J. Eq.* (*11 Dick.*) *35*), she lulled the complainant into inactivity and a feeling of security as to any objection that might be urged on the score of title and she furthermore allowed this condition of affairs to remain undisturbed until the day of the final hearing, excusing her delay, however, upon the ground that the true state of the title was unknown to her until about the time of the hearing. Furthermore, in March, 1908, two months before the decree, the defendant served notice of rescission of the contract on account of delay. No objection was then made to the character or the validity of the proceedings for obtaining an order authorizing the complainant to sell.

This conduct of the defendant likewise had a natural tendency to raise in the mind of the complainant a reasonable belief that the point of difference between the parties was laches and not the character of the title. Now, if the defendant had promptly specified that objection would be made to the title, the complainant would have had all the time existing between the disclosure of that defence to him and the entry of the decree, in which to remove the defects complained of. So that we do not need to press to its extreme result, the effect of the failure to answer the material allegations of the bill as to a good title being tendered, but may rest upon the fact that the silence of the defendant in this particular has raised an equity in favor of the complainant, entitling him to such reasonable time for completing the title

not exceeding that which he might have had if the defendant had urged this defence promptly.

The English rule seems to be that laid down in *Langford* v. *Pitt, 2 P. Wms. 630*, by Sir Joseph Jekyll, M. R., that it is sufficient if the party entering into articles to sell has a good title at the time of the decree. The cases are collected under *Seton* v. *Slade, 2 White & T. Lead. Cas. (4th Am. ed.) 529*. It has been said that the courts have never directed performance by the vendee if the title at the time of the decree was still defective. The English rule, however, holds that if the master's report on title is that the vendor, upon getting in a term or getting administration, &c., will have a title, the court will put him under terms to procure that speedily. *Coffin* v. *Cooper, 14 Ves. 205*. In a note to *Cooper* v. *Denne, 1 Ves. 567*, it is said that the rule has been productive of great hardship, and Lord Eldon, who decided *Coffin* v. *Cooper,* declared that he would never extend it to any case to which it had not been previously applied.

The difference, however, between the practice of the English courts and that of our own, makes it illogical to apply their rules with exactness to all cases arising in our courts. They have the matter of title first referred to a master to report upon and then comes the decree. They hold that perfection of the title by the time of the decree, that is, after its adjudication by the master, is sufficient. Now with us the title is not adjudicated until the final hearing, upon which a decree may be entered and signed immediately. Thus we see that the English rule is even more lenient than ours, for it allows the necessary time intervening between the master's determination of the title and the time of the entry of the final decree.

Professor Pomeroy, in his work on *Specific Performance* (at § 424), says: "There are many modes in which the vendee, by his acts or omissions, will waive all right to object to the vendor's delay in making out a good title." And in *Seton* v. *Slade, 7 Ves. 265,* where specific performance was decreed, the abstract, though delivered very late, and under a notice that the vendee would insist on his deposit, with interest, if the title should not be made out and possession delivered by the time of payment, having been received and kept without objection, Lord Eldon,

upon summing up the case, said: "Under the circumstances, therefore, whether the time is or is not an objection founded upon the authorities, the reports of this court furnish—which I will not discuss, let the authorities upon that point turn the scale either for the defendant or the plaintiff—there is no authority that has not some reference to the conduct of the party in the meantime; and upon the conduct, this defendant has no right, under the circumstances, to say this contract was not performed within the two months."

In *Murrell* v. *Goodyear, 1 DeG. F. & J. 432*, Lord Justice Turner said: "I am not prepared to hold that in the case of *bona fide* conduct on the part of the vendor putting up property for sale in which he has a partial interest supposing himself to have entire interest, it is competent to a purchaser to say that the contract shall be no contract if the vendor is able ultimately to make a title to the property according to the more extended interest he has contracted to sell. I certainly have always thought that in such a case a purchaser could have no right to resist a specific performance of the contract. But I say without any hesitation that if a purchaser has any such right as he has contended for and insisted upon on the part of this defendant, it is a right he is bound to insist upon at the first moment."

In *Dresel* v. *Jordan, 104 Mass. 415*, it was said: "In all cases it is sufficient for the seller upon a contract made in good faith if he is able to make the stipulated title at the time when, by the terms of the agreement or by the equities of the particular case, he is required to make the conveyance, in order to entitle himself to the consideration."

The defendant concedes that there are precedents where a decree has been made on terms allowing a vendor to remove mortgages from the property (*Oakey* v. *Cook, 41 N. J. Eq. (14 Stew.) 350*), and where the vendor has perfected his title before bill filed, or before the hearing, or before the decree, or even after that time, when the vendor held a contract entitling him to such outstanding interest (*Soper* v. *Kipp, 5 N. J. Eq. (1 Halst.) 383*), but it is contended that no cases can be found where additional time has been decreed to afford an opportunity to acquire an outstanding title over which the vendor had no control.

When the vendor, in a suit for specific performance, by reason of the silence or the conduct of the vendee, regarding the title to be conveyed, during the negotiations or in the progress of the cause, has lost an opportunity to perfect his title before decree, this opportunity will still be afforded to him by the allowance of a reasonable time even after the entry of the decree, if it can be done without hardship to the vendee.

It is apparent that by reason of the defendant's delay in not bringing forth her objection until the very day of the hearing, an equity has arisen in favor of the complainant that he be not deprived of the period of time, which he would have had under the ordinary rules, and therefore we are constrained to hold that the allowance of thirty days after the making of the decree within which to obtain a release for the alleged outstanding interest is not inequitable, and does not work hardship upon the defendant.

The decree should be affirmed.

On complainant's appeal—

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, GRAY, DILL, CONGDON—13.

*For reversal*—VROOM—1.

On defendant's appeal—

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON—14.

*For reversal*—None.