At the conclusion of the hearing the defendant was directed to specifically perform his contract to purchase the complainants' property. The contract fixed September 1st, 1929, as the date of closing. The defendant defaulted. The complainant then by letter set September 14th and declared time of the essence of the contract. The parties met and for the first time the defendant made known that the premises were subject to an easement and that eaves of the garage on the rear of the property overhung adjoining land four inches, which violated one of the covenants of the contract. For these reasons and because of previous objections, that there were judgments of record against prior owners, that the front of the lots was two one-hundredths feet (one quarter inch) short of the description in the deed, and that the building had been damaged since the making of the contract, there was no closing. Later, September 23d, the defendant demanded the return of his deposit and the day following the complainant filed his bill. The answer set up in defense all the foregoing objections and a counter-claim for the return of the down-money. At the hearing, January 30th, 1930, complainants' counsel produced a deed which he represented released the easement and his representation was accepted by court and counsel without examining the document; the judgments were shown not to be against prior owners, the overlapping eaves had been removed, there was no proof of front shortage, though an abatement was tendered, and the injury to the building was trifling, for which the defendant was allowed $10. The point particularly stressed by the defendant was the failure of a marketable title on the deferred closing day; the contract called for a marketable title. The complainant having made time of the essence of the contract, it was the contention that the defendant had the right to withdraw and that the complainant was barred of recovering.Vautrinot v. Booth, 105 N.J. Eq. 211. It was ruled that because the complainant had been lured by the defendant's conduct into making time of the essence *Page 242 
of the contract, he was entitled to be relieved of the legal consequences upon the principle adopted in Van Riper v.Wickersham, 77 N.J. Eq. 232. And these were the circumstances: The negotiations for the closing had been left by the parties to their lawyers. Before the first closing day, September 3d (September 1st was Sunday, the next day Labor Day) the attorney of the defendant (not Mr. Schotland) wrote the complainants' lawyer under date of August 29th, calling his attention to the judgments, the one-quarter inch shortage and enclosing a list of items of damage to the building. It was written in confirmation of objections he had made at a previous conference of the two. Being of the opinion that they were not obstacles — and they were not — and disappointed at the defendant's failure to appear on the first closing day, the complainants' lawyer by letter fixed September 14th, and made time of the essence. The complainants' attorney says he did not learn of the added objections, the easement and the overhanging eaves, until the 23d, and there is evidence to support him, but be that as it may, it is reasonably certain that they were not made before the meeting of September 14th. The defendant's former lawyer, Kaplan, claims that he made the additional objections in a second letter on August 29th, supplementing the one of that day noting the first objections, and he says he personally mailed it. It was not received. A manifold copy of the supposed letter was produced, but there was much in proof to discredit Kaplan, and the belief was entertained that the letter had not been sent and this, because of these discrepancies: Six Kaplan letters to complainants' lawyer, written during the negotiation, bear the initials JIK:RL; the manifold does not. Ruth Lasher, his secretary, remembers writing the first letter and delivering it in person, at her employer's direction, but has no recollection of the second. In two of the letters, one of September 3d, he chides complainants' lawyer for ignoring "the contents of my letter to you of the 29th," and in the other, September 9th, he complains that he had not received a reply "to my letter of August 29th," although he had received full answer to the first one. Rather *Page 243 
convincing evidence that the easement and overhanging eaves objections were not made before September 14th is Kaplan's letter of September 23d, demanding the return of the deposit, which he starts off with "now that September 14th, 1929, has passed and you have ascertained that your client could not make a conveyance in accordance with the agreement," c. In Van Riper v.Wickersham, supra, the defendant's objection to the title was withheld until the final hearing and the court gave the complainant time after the decree to meet the objections, holding that by the defendant's silence an equity arose in complainant's favor to perfect his title within the period after the decree that he would have had before the hearing had the defendant given timely notice of the defects. In the instant case it was considered that an estoppel arose against the defendant upon the same principle that an equity arose in the cited case.
The final decree, March 11th, 1930, directed the defendant to perform his contract on a day and at an hour and place therein mentioned, and he proceeded to comply, but refused, alleging that the easement had not been discharged. Thereupon, upon his notice to be relieved of performance, the decree was modified directing performance before a master on March 26th, 1930. The master reported that the complainants' title was not marketable until March 19th, 1930, and the defendant renewed his motion.
The premises are lot 526 and the westerly half of lot 525 of a subdivision of the Weequahic Park Land and Improvement Company. In its conveyance to the complainants' predecessor in title, as it did in all its deeds, the company stipulated:
"The said pary of the first part [Weequahic Park Land and Improvement Company] hereby reserves to itself, its successors and assigns the right to erect, keep and maintain upon the rear of the premises hereinabove described immediately adjoining the rear line thereof, a pole with one or more crossarms attached thereto, to be used by the said party of the first part, its successors or assigns, for the purpose of sustaining thereon telephone and electric light wires; together with the right to string and maintain said wires across said lot, at the rear thereof," c. *Page 244 
This was with a view to keeping poles and wires off the streets. The company gave to what is now the New Jersey Bell Telephone Company the right to erect poles and string wires. The telephone company released its right to the complainant November 15th, 1929. That was the document the complainant represented at the hearing to be a release of the easement. The Weequahic company voluntarily dissolved in 1920. Its trustee released the easement to the complainant March 19th, 1930.
It was the court's first thought to open and set aside the decree, continue the hearing and enter a new decree, and thus bring the complainant within the rule of timely title at the time of the decree, but later it was concluded that the decree must stand and that the motion to be relieved of its directions should be entertained; this would seem to be the correct course. It is the accepted rule in this state, in specific performance, when time is not of the essence of the contract, that a vendor has until the final decree to perfect his title. Gerba v.Mitruske, 84 N.J. Eq. 141. A vendor may be allowed to perfect his title after decree if his failure to perfect it before was due to the conduct of the vendee. Van Riper v. Wickersham,supra. In the instant case there are no mitigating circumstances that would warrant an extension of time beyond the final decree. The defendant's answer gave due notice of the easement and the complainant had ample time before the final hearing to obtain a proper release. Had the court, at the hearing, been correctly informed of the nature of the document represented to be a release of the easement, the bill would have been dismissed for failure of a marketable title at the hearing.
The complainant now, in resisting the motion, claims that his title was clear at the time of the decree; that previously the easement had been abandoned. No proof of this was tendered at the hearing and it was not an issue. As to evidence taken before the master, it is sufficient to say that the question was not referred to him. The argument, that the easement was abandoned, is based on the alleged facts that the Weequahic Park company dissolved in 1920; that a garage *Page 245 
was built over part of the right of way upon the involved premises, and that like structures are over parts of the right of way on lots all over the tract; and that the easement has not been used for a number of years.
Upon the dissolution of the Weequahic Park company the title to the easement remained in the company. Dissolution of the company did not work an abandonment of the easement. Upon dissolution of a corporation, its corporate existence continues for the winding up of its affairs and conveying its real estate. In activity a corporation is managed by a board of directors; in dissolution by a board of trustees — the former directors. The board of trustees winds up its affairs and conveys its real estate, the title to which remains in the corporation meanwhile. Sections 52, 53, 54, Corporation act. Comp. Stat. 1634.
Part use of the locus in quo, subject to an easement, by the servient owners is not evidence of abandonment of the easement. It is not inconsistent with the easement to erect poles and string wires upon and over the remaining land.
Non-user does not prove abandonment. "Abandonment is a question of intention. Non-user is a fact in determining it, but is not, even for twenty years, conclusive evidence in itself of an abandonment." Raritan Water Power Co. v. Veghte, 21 N.J. Eq. 463.
"It is well settled that mere non-user, for any length of time, no matter how long, will not destroy or extinguish an easement arising, as here, out of express grant as distinguished from one arising out of long adverse user. In order to destroy the easement by non-user, there must, in addition, be some conduct on the part of the owner of the servient tenement adverse to and defiant of the easement, and the non-user must be the result of it. In short, it must amount to an acquiescence of twenty years in acts of the owner of the servient tenement hostile to and intended to prevent it." Dill v. Board ofEducation, 47 N.J. Eq. 421; Raritan Water Power Co. v. Veghte,supra; Johnston v. Hyde, 33 N.J. Eq. 632; Arlington Realty Co.
v. Keller, 105 N.J. Eq. 196. The easement was outstanding at the entry of the final decree. *Page 246 
The defendant would not have been compelled to take a doubtful title. In Van Riper v. Wickersham, supra, our court of errors and appeals said that, "it is the uniform rule in this state to decline to decree performance where * * * doubt exists, though rested on grounds merely debatable, but which might visit upon the purchaser litigation in that regard, and that, too, where at law the title might in fact be declared good."
It may be observed that the title is even presently in doubt and that the easement may be still in the Weequahic Park company. The release of the easement to the complainant is made by the trustees individually. It is not the deed of the corporation by the trustees. On its face, it is not the corporate act. SeeKnopf v. Alma Park, Inc., 105 N.J. Eq. 299.
The defendant will be relieved of the performance of the decree and a decree will be advised on his counter-claim for the down-money and interest, search for $75 and costs of suit, including a counsel fee of $200 on this motion.