**UNITED STATES of America,**
**Appellant,**

v.

**C. T. LOO, Trustee in Dissolution for the Creditors and Stockholders of C. & M. McCarthy, Ltd., a Dissolved Corporation, Appellee.**

No. 15237.

United States Court of Appeals
Ninth Circuit.

Oct. 10, 1957.

Charles K. Rice, Asst. Atty. Gen., Grant W. Wiprud, Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., Louis B. Blissard, U. S. Atty., E. D. Crumpacker, Asst. U. S. Atty., Honolulu, Hawaii, for appellant.

Robertson, Castle & Anthony, William F. Quinn, Alfred L. Castle, Honolulu, Hawaii, for appellee.

Before HEALY, FEE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

A sale of real estate by an Hawaiian trustee (of a corporation) in dissolution for the benefit of creditors is made at a gain over the late corporation's cost basis. Is this "profit" taxable income (a capital gain) to the trustee or should the transaction be treated as that of a sale by the stockholders in their individual right as if they had finally received the property in distribution on liquidation? That is our question here when the trustee has paid the taxes under protest and sued in district court to recover the amount which he has paid. The district court ruled in favor of the trustee and the United States appeals.

C. & M. McCarthy, Ltd., was a corporation organized under the laws of the Territory of Hawaii. In 1944 it owned (and presumably operated) in Honolulu the Donna Hotel and the Waikiki Apartments. Over three-fourths of the value of the two was in the Donna, but our primary concern here is with the Waikiki on which, in 1944, there was an appreciation in value over the company's cost basis.

It seems reasonable to say that purchasers and sellers probably had tax consequences in mind when they tailored the forms of their transactions here under review.

Late in 1944 the appellee, C. T. Loo in his individual capacity, was one of a group that wanted to acquire the Donna. The then stockholders of C. & M. McCarthy, Ltd., were unwilling to sell the Donna as a pure real estate sale for the offered price of $325,000, but they were willing to sell all of the stock of the company to Loo's associates for $400,000. Practically, this would pass ownership of both the Waikiki and the Donna. With assurance that the Waikiki, which Loo and his associates did not want, could be resold for $75,000, all of the stock was sold and transferred by the old owners to the Loo group in January, 1945. The cost basis of C. & M. McCarthy, Ltd., on the Waikiki was $20,849.30.

With Hun Yun Yei, a non-associate, ready to buy Waikiki for $75,000, the Loo associates by appropriate resolution dissolved the McCarthy company on February 15, 1945. The following day, February 16, the treasurer of the Territory of Hawaii issued his decree of dissolution and appointed C. T. Loo as trustee in dissolution for the creditors and stockholders of the company. Three days later Loo, as trustee, sold Waikiki [1] to Hun Yun Yei for $75,000 cash. Had the sale been made by the corporation while fully alive, it should be agreed that the capital gains tax was $13,122.20.[2]

When Loo as trustee made the final return for the corporation he did not report any taxable gain on the Waikiki. His position was that he really sold the property for the stockholders (in their individual capacities) of the dissolved company. Internal Revenue maintained that the transaction was taxable to the dissolved corporation and that Loo as trustee should pay the tax. The district court was of the view that the trustee was not in his trust capacity concerned with the tax and granted full recovery to the trustee for the taxes paid under protest. This court disagrees and sustains the Internal Revenue Service.

This is a case under the 1939 Internal Revenue Code, 26 U.S.C.A. Primarily we are concerned with § 52 of that code and § 29.22(a)–20 of Treasury Regulations 111 promulgated under the 1939 Code. This sub-section of the regulations reads as follows:

"*Gross Income of Corporation in Liquidation.*—When a corporation is dissolved, its affairs are usually wound up by a receiver or trustees in dissolution. The corporate existence

---

1. On or about August 31, 1945, Loo as trustee distributed the Donna to the stockholders. Presumably they took title as tenants in common. No income tax problems are here presented concerning the Donna.

2. If the goverment must repay the tax paid under protest, then also more than $3,600 in interest is due the taxpayer—trustee.

is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes. (See sections 274 and 298.) Any sales of property by them are to be treated as if made by the corporation for the purpose of ascertaining the gain or loss. No gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, however they may have appreciated or depreciated in value since their acquisition. But see section 44(d) and section 29.44–5. (See further section 29.52–2.)"

Inherent in the taxpayer's position is the premise that on February 19, 1945, under Hawaiian law C. & M. McCarthy, Ltd., was dead—dead as anything could be; that for corporate taxation to be effective there must be some flicker of life left at the time a transaction is made.

This is generally a period when by statute corporations in passing to the corporate graveyard are kept in a twilight or comatose condition for a period of time, neither dead nor alive. In this interim creditors and stockholders come to the deathbed by invitation and the tax gatherer comes uninvited to draw for the last time.

The district judge was impressed with the finality of an order in dissolution under Hawaiian law. The government on the other hand points to certain sections in the Hawaiian statutes which he says are inconsistent with absolute corporate death. This court on a close question of Hawaiian law should indulge every presumption in favor of him who lives with Hawaiian law every day. This court does not intend herein to set aside his concept of when the Hawaiian company in the hands of a trustee dies.

■ There is good argument that Congress in tax legislation should tie itself to local concepts of entities.[3] But that is a matter of legislative policy. It has long been settled the federal government can remold the types of kettles before it puts its long handled spoon in them.[4]

There are many decisions which labor earnestly to find some spark of life in the corporation while it is in the hands of a trustee in dissolution.[5] Then much attention is devoted to construing § 29.22 (a)-20.[6] The second sentence says: "The corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes." Is the sentence merely a recital of what is usually the state law, or does it establish something affirmatively?

Let us go through the section sentence by sentence.

The first sentence: "When a corporation is dissolved its affairs are usually wound up by a receiver or trustees in dissolution." Comment: This obviously is a recital pointed at local law.

Now, (repeating) the second sentence: "The corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes." Comment: Two interpretations are possible. It may be a pure recital such as: "[Usually] [t]he corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes." Or, it may

---

3. Against such a thesis is the other one that taxes among the states and territories ought to be uniform and should not have different results solely on the basis of a local quirk of statute.

4. See United States v. Kintner, 9 Cir., 216 F.2d 418, 424.

5. Taylor Oil & Gas Co. v. Commissioner of Internal Revenue, 5 Cir., 47 F.2d 108; Burnet v. Lexington Ice & Coal Co., 4 Cir., 62 F.2d 906; and Northwest Utilities Securities Corp. v. Helvering, 8 Cir., 67 F.2d 619.

6. First National Bank of Greeley, Colo. v. United States, 10 Cir., 86 F.2d 938.

have operative force within its words and mean, in effect: "[I, the Commissioner of Internal Revenue, for the Secretary of Treasury, hold irrespective of local law that] [t]he corporate existence is continued for the purpose of liquidating the assets and paying the debts, and such receiver or trustees stand in the stead of the corporation for such purposes."

The third sentence: "Any sales of property by them [trustees in dissolution] are to be treated as if made by the corporation for the purpose of ascertaining the gain or loss." Comment: This third sentence is all important. If the second sentence is operative, as the government contends, of course it reaches Mr. Loo as trustee. If the second is a recital, then in this court's judgment the third sentence reaches Mr. Loo as trustee. "Sales of property by them [7] in dissolution" refers to "a trustee or receivers in dissolution." The third sentence stands and can stand on its own feet. Any recitals in the first and second sentence would not seem to vitiate the plain meaning of the third sentence.

 The taxpayer makes a strong argument that the regulation, § 29.22(a)–20 of Treasury Regulations 111, is addressed to § 52 of the 1939 Internal Revenue Code; the code section is simply one on who should file returns; and therefore code section and regulation section are in pari materia with the scope of the regulation being no broader than the single code section itself. This court rejects the argument. There may be an argument that fixing of liability was badly placed in § 29.22(a)–20, but this court's view is that this sub-section does purport to fix or define liability for taxation. Consequently the sweep of the regulation extends right back to § 22(a) of the Internal Revenue Code of 1939, the section and subdivision defining gross income.

The regulation here goes back at least to 1926.[8] As a freshly made regulation, it would seem to be within the scope permissible under the basic statutes. The passage of time with subsequent re-enactments of the revenue statutes, all with full knowledge of the Congress, strengthens the regulation.

Judgment reversed.

---

7. Emphasis supplied.

8. Article 548, Treasury Regulations 69, under the Internal Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 145; also, Article 71, Treasury Regulations 74, under the Internal Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 345.