JAMES PORO, TRANSFEREE OF THE ASSETS OF EAST ISLIP THEATRE, INC., TRANSFEROR, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 86992–86994. Filed January 2, 1963.

*Joseph R. Shaughnessy, Esq.,* for the petitioners.
*William F. Chapman, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners have been consolidated herewith for purposes of trial, briefs, and opinion: Katherine Poro, Transferee of the Assets of East Islip Theatre, Inc., Transferor, Docket No. 86993; and James Poro and Katherine Poro, Docket No. 86994.

OPINION.

ARUNDELL, *Judge:* Respondent, in Docket Nos. 86992 and 86993, determined for assessment against *each* of the petitioners, James Poro and Katherine Poro, the amount of $14,191.25 (being a deficiency in income tax of $11,353 against East Islip Theatre, Inc., for the calendar year 1956, plus an addition to tax of $2,838.25 under section 6651, I.R.C. 1954, for failure to file tax return), plus interest as provided by law, as constituting petitioners' liabilities as transferees of property of East Islip Theatre, Inc., a dissolved corporation.

Respondent, in Docket No. 86994, also determined a deficiency in income tax for the calendar year 1956 in the amount of $6,425.09 against petitioners James Poro and Katherine Poro in their individual capacities for that year. On brief, respondent concedes he erred in determining this deficiency of $6,425.09.

In Docket Nos. 86992 and 86993 the error assigned is identical and is as follows:

The Commissioner erred in assessing a tax of $11,353.00 and penalty of $2,838.25, plus interest as taxpayer's liability as a transferee of assets of East Islip Theatre, Inc. for income tax for the calendar year 1956.

The facts were stipulated and are so found.

Petitioners James Poro and Katherine Poro are husband and wife and reside in Islip, N.Y. They filed a joint individual income tax return for the calendar year 1956 with the district director of internal revenue for the Brooklyn district, Brooklyn, N.Y.

East Islip Theatre, Inc., was organized as a corporation under the laws of the State of New York in 1932. The business purpose of the corporation was to operate a motion-picture theater. Its 45 shares of stock were owned: 30 shares by James Poro and 15 shares by Katherine.

A certificate of dissolution was filed with the Department of State of the State of New York on December 28, 1949, by East Islip Theatre, Inc.

All of the assets of East Islip Theatre, Inc., were distributed to the two shareholders in December 1949, including notes and accounts receivable in the amount of $9,101.21.

The $9,101.21 was reported by petitioners as long-term capital gain in their 1949 joint individual income tax return filed for that year.

On June 3, 1953, a suit was instituted against Loew's, Inc., and other motion-picture film distributors in the name of East Islip Theatre, Inc., and James Poro, Katherine Poro, and Gloria Poro Helbig, as trustees in dissolution. The cause of action of this suit was an alleged violation of the antitrust laws for a loss of profits and damages incurred by the corporation during the period from 1932 to 1948.

At the time of dissolution of East Islip Theatre, Inc., James Poro, Katherine Poro, and Gloria Poro Helbig were directors of the corporation.

On January 26, 1956, the suit previously mentioned was settled out of court. The gross amount of the settlement was $65,000. This sum was subject to certain disbursements in the amount of $180.73 and to an attorney's fee of 50 percent of the balance.

On April 26, 1956, a check in the amount of $32,409.63 was drawn on the Hanover Bank to the order of "East Islip Theatre, Inc., James Poro, Katherine Poro, and Gloria Poro Helbig, as Trustees in Dissolution of East Islip Theatre, Inc." This check was deposited in the personal checking account of James Poro in the First National Bank of East Islip, on April 27, 1956.

In Schedule D of their joint individual income tax return filed for the calendar year 1956 petitioners reported the above-mentioned $32,409.63 [2] as a long-term capital gain.

East Islip Theatre, Inc., filed no income tax return for the year 1956 or for any other year subsequent to 1949. In the 1949 return the corporation showed total assets at the beginning of the year of $9,291.21, deductions for the year of $190, and no assets at the end of the year with the notation "Corp dissolved 12/28/49."

East Islip Theatre, Inc., prepared Form No. 966, return of information under section 148(d), I.R.C. 1939, and reported therein that its last return covering the year 1949 was filed with the first collection district and that the "Date of adoption of resolution or plan of dissolution, or complete or partial liquidation" was December 1949. The corporation also prepared Form No. 1096, annual information return for 1949 and Form No. 1099L showing thereon a distribution of $9,101.21 to the shareholders in exchange for the 45 shares of common stock.

Respondent contends that although it has been stipulated that "A Certificate of Dissolution was filed with the Department of State of the State of New York on December 28, 1949 by East Islip Theatre, Inc." and that "*All* of the assets of East Islip Theatre, Inc. were distributed to the shareholders in December 1949" (emphasis supplied), nevertheless the corporation, under section 105, Stock Corporation Law of New York, paragraph 8,[3] continued in existence for the purpose of winding up its affairs.

Under the facts of this case we do not think section 105 of the law referred to is of any help to the respondent. There might be some

---

[2] Petitioners actually reported $32,559.63. In their brief petitioners in a note state that the extra $150 reported was received by them as a refund from counsel.

[3] Par. 8 provides:

"Such corporation shall continue for the purpose of paying, satisfying and discharging any existing liabilities or obligations, collecting and distributing its assets and doing all other acts required to adjust and wind up its business and affairs, and may sue and be sued in its corporate name."

merit in the respondent's contention if instead of distributing "All" of its assets to its shareholders in liquidation, the corporation had retained its claim against Loew's, Inc., and the other motion-picture film distributors. But this was not done. The parties have stipulated that "*All* of the assets of East Islip Theatre, Inc. were distributed to the shareholders in December 1949, including notes and accounts receivable in the amount of $9,101.21." (Emphasis supplied.) It is true that the claim was not specifically mentioned but apparently it was not regarded as having any value in 1949 for suit was not commenced on the claim until June 3, 1953. But the word "all" would certainly include any claim that did exist even if it had no known value at the time of distribution in 1949. The fact that the shareholders sued in the name of the corporation and in their own names as trustees in dissolution does not, in our opinion, make the recovery income to the dissolved corporation. We think the recovery in 1956 was income to the shareholders.

Respondent cites *O'Sullivan Rubber Co.* v. *Commissioner*, 120 F. 2d 845 (C.A. 2, 1941), affirming 42 B.T.A. 721, as supporting his determination. That case held that a New York corporation remained in existence under section 105, *supra*, for the purpose of winding up its affairs. Section 105 was clearly applicable in that case as the corporation there involved was still in the process of liquidation. Here the corporation had been completely liquidated and all of its assets distributed. The O'Sullivan Rubber Co. was not dead but moribund. East Islip Theatre, Inc., was dead.

Next the respondent cites *Sager Glove Corporation*, 36 T.C. 1173, for the proposition that the moneys recovered in 1956 were income. That the moneys recovered were income is not disputed. The question is whose income was it? Was it income to a corporation still in the process of liquidation or was it income to petitioners? Petitioners reported it as their income. We think that was proper.

The respondent in his brief quotes from section 1.6012–2(a)(2) of the Income Tax Regulations promulgated under the 1954 Code, as follows:

A corporation in existence during any portion of a taxable year is required to make a return. * * * A corporation is not in existence after it ceases business and dissolves, retaining no assets, whether or not under State law it may thereafter be treated as continuing as a corporation for certain limited purposes connected with winding up its affairs, such as for the purpose of suing and being sued. If the corporation has valuable claims for which it will bring suit during this period, it has retained assets and therefore continues in existence. A corporation does not go out of existence if it is turned over to receivers or trustees who continue to operate it. * * *

Petitioners contend this regulation is more in support of their position than the respondent's. The respondent has underscored and emphasized the last sentence of the quotation. But we do not think

this sentence is in harmony with the facts of this case. The instant receivers or trustees did not continue to "operate" East Islip Theatre, Inc. We think that the second sentence in the above quotation is the one that more nearly fits the facts in this case. East Islip Theatre, Inc., was not in existence after 1949 when it was dissolved and retained no assets.

*J. Ungar, Inc.*, 26 T.C. 331, affd. 244 F. 2d 90 (C.A. 2, 1957), relied upon by the respondent, is distinguishable from the facts in the instant case in that J. Ungar, Inc., was a corporation in the process of liquidation, whereas East Islip Theatre, Inc., was not a corporation in process of liquidation. East Islip retained no assets to pay its debts or to distribute among shareholders for it had no debts and had in December 1949 distributed "all" of its assets.

Respondent also relies upon our decisions in *Henry Hess Co.*, 16 T.C. 1363, revd. 210 F. 2d 553 (C.A. 9, 1954), and *Cold Metal Process Co.*, 25 T.C. 1333, revd. 247 F. 2d 864 (C.A. 6, 1957), whereas petitioners rely upon the reversals by the Ninth and Sixth Circuits, respectively. These decisions emphasize the importance of examining carefully the facts in the particular case for the purpose of ascertaining whether after formal dissolution the corporation remained in existence for tax purposes. In the *Hess* and *Cold Metal* cases we thought the corporations there involved did remain in existence for tax purposes after dissolution whereas the Circuit Courts did not think so and regarded the corporations as dead after they were dissolved. In the instant case we think the stipulated facts clearly show that East Islip Theatre, Inc., was dead after it was dissolved on December 28, 1949. It had no liabilities and *"all"* of its assets were distributed to its shareholders in exchange for their stock. Nothing remained for the corporation to do to wind up its affairs. It was not until 3½ years after dissolution that the old shareholders apparently decided to bring to the surface a hitherto unpressed claim of the corporation against Loew's, Inc., et al., for loss of profits and damages incurred by the corporation during its existence. The suit was brought in the names of petitioners as trustees in dissolution of the corporation but this was a mere matter of form as the suit was clearly for the benefit of the shareholders who had received as a distribution in complete liquidation "all" the assets possessed by the corporation at the time of liquidation, and by reason of such distribution were entitled to receive and did receive the amount recovered. Being convinced as we are that the facts in the instant case clearly show that the operation of East Islip Theatre, Inc., had come to an end when it was dissolved in 1949 and was not in existence for tax purposes in 1956, we think the instant case is readily distinguished from our decisions in the *Hess* and *Cold Metal* cases. Therefore, in view of the factual distinctions in this case from the facts in the *Hess* and *Cold Metal* cases we need not here decide whether we should still

follow our decisions in those cases or whether we should follow the reversals.

Petitioners have called our attention to *Nakatani* v. *Cullen* (N.D. Calif.) unreported in Federal Supplement but appearing at 5 A.F.T.R. 2d 519 and 60–1 U.S.T.C. par. 9213. The facts in that case closely parallel the facts in the instant case. There a chose in action was transferred to individual shareholders as part of a liquidating dividend on a corporate dissolution. The dissolved corporation there was a motion-picture exhibitor. In 1945 its landlord wrongfully took occupancy of the theater. In 1948, after litigation, the corporation returned to occupancy and sued the landlord for restitution of profits for the period of wrongful possession of the leasehold. At the time of liquidation and dissolution in 1950 the shareholders entered into an agreement whereby they agreed to carry on the litigation. At the time of the liquidation the fair market value of the chose in action could not be ascertained. Judgments in favor of the dissolved corporation became final in 1954. The District Court held that the judgments represented income to the *shareholders* taxable at capital gains rates as a delayed distribution in liquidation. In that case the Government did not contend, as it does in the instant case, that the judgments represented income taxable to the corporation and that the shareholders were then liable as transferees. It merely contended that the judgments were income of the *shareholders* taxable as ordinary income and not at capital gains rates.

In the instant case petitioners in their joint return for 1956 reported the recoveries in 1956 as their income taxable at capital gains rates. The respondent in Docket No. 86994 determined that the reported income should have been taxed as ordinary income and determined the deficiency of $6,425.09. As previously stated herein, the respondent now concedes that he erred in determining the deficiency of $6,425.09. This would be in line with *Nakatani* v. *Cullen*, *supra*. For a like result, see also *McDonald* v. *United States*, 181 F. Supp. 332 (W.D. Wash.).

In conclusion, we hold that the East Islip Theatre, Inc., was not in existence as a corporate entity in 1956 and subject to tax on the $32,409.63 recovered in that year from the suit brought in 1953; that the East Islip Theatre, Inc., was not required to file an income tax return for the year 1956; that since the corporation was not liable for any tax or addition to tax for the year 1956, petitioners are not liable as transferees of the assets of East Islip Theatre, Inc.; and that petitioners were correct in reporting the recovery of the $32,409.63 as their income in 1956.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

OPPER, *J.*, concurring: It seems to me sufficient to say here that we follow the decisions of the two Courts of Appeals which have passed upon the question. It is hard for me to see that the cases are distinguishable in principle.