SIDNEY MESSER, TRANSFEREE, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6523-65—6525-65.   Filed June 16, 1969.

---

[1] *Consolidated herewith are the following cases:* Nat Malamuth, docket No. 6524–65; and Estate of Samuel Antkies, Deceased, Jack Antkies and Shirley Antkies, Executors, docket No. 6525–65.

*Julius G. Hirsch*, for the petitioners.
*Frank N. Panza*, for the respondent.

442

## OPINION

Petitioners contend that the corporation gave the Internal Revenue Service notice of the corporate liquidation, complied with the requirements of New Jersey law for de jure dissolution, closed its accounts and distributed all its assets, and terminated its existence on September 30, 1960. The corporation, they assert, retained no assets, received no income, and was not required to file an income tax return for any

period thereafter. Respondent, on the other hand, argues that Tel-O-Tube continued in existence after the date of its dissolution under New Jersey law because it retained assets, namely, the notes and the claim against RCA, and that Tel-O-Tube is taxable on the interest from the notes for the period from September 30, 1960, until August 1, 1961, and on the proceeds from the settlement of the claim against RCA.

Petitioners' contention that the existence of Tel-O-Tube for Federal income tax purposes terminated as of September 30, 1960, is not supported by the record. Section 1.6012–2(a)(2), Income Tax Regs., provides, in pertinent part, as follows:

(2) *Existence of corporation.* A corporation in existence during any portion of a taxable year is required to make a return. If a corporation was not in existence throughout an annual accounting period (either calendar year or fiscal year), the corporation is required to make a return for that fractional part of a year during which it was in existence. A corporation is not in existence after it ceases business and dissolves, retaining no assets, whether or not under State law it may thereafter be treated as continuing as a corporation for certain limited purposes connected with winding up its affairs, such as for the purpose of suing and being sued. If the corporation has valuable claims for which it will bring suit during this period, it has retained assets and therefore continues in existence. A corporation does not go out of existence if it is turned over to receivers or trustees who continue to operate it. * * *

These provisions of the regulation clearly indicate that if a corporation retains assets, it is to be treated as a continuing taxable entity for Federal income tax purposes, even though it is in the process of liquidation and has terminated its legal existence under State law. See *J. Ungar, Inc.*, 26 T.C. 331 (1956), affd. 244 F. 2d 90 (C.A. 2, 1957).

The facts herein closely parallel those present in *Hersloff* v. *United States*, 310 F. 2d 947 (Ct. Cl. 1962), where it was held that the corporation continued in existence by reason of the continued business activities of the trustees in dissolution, although dissolution under State law had occurred many years earlier. Here, as in *Hersloff*, the corporation was not dead and buried. It had and claimed assets; it made efforts to realize on its claim; it had certain debts; and it regularly distributed moneys to attorney-creditors as well as to stockholders. Specifically, Tel-O-Tube retained assets of $12,277.21, exclusive of the notes and claim now in issue, and liabilities of $4,500, exclusive of the $112,205.65 indebtedness to RCA; it continued to maintain a bank account until November 6, 1961, and from September 1960 until November 1961 it made deposits of $17,864.13. These facts are sufficient to establish that the corporation was a viable entity through November 1961 for Federal income tax purposes.

The corporation's retention of its claim against RCA and its ac-

tivities in negotiating its settlement further support the conclusion that it continued in existence within the purview of section 1.6012–2 (a) (2), Income Tax Regs. The weight of the evidence shows that the corporation never, in fact, assigned the claim. It was the corporation, and not the petitioners, that retained the attorneys to prosecute the claim against RCA, that executed the general release of any claim *it* might have against RCA, and that was billed by and paid the attorneys for negotiating the settlement of the claim. Moreover, the corporation never informed RCA that it had assigned the claim. These facts establish to our satisfaction that the corporation retained the claim and did not assign it to its stockholders.

Petitioners argue that the fact that the corporation "may or may not have had a claim against RCA is disregarded under section 1.6012–2(a)(2), as its continuance under State law for the purpose of suing or being sued is nullified by the holding of the regulation." In our opinion this argument completely misses the essential point of this regulation. In substance, section 1.6012–2(a) (2) provides that a corporation which ceases business, dissolves, and distributes *all* its assets will not be considered as a continuing taxable entity merely because its existence is continued by State law for certain limited purposes, such as for the purpose of suing or being sued; but that, if the corporation has a valuable claim for which it will bring suit during the period of winding up, *then it has retained assets* and continues in existence for Federal income tax purposes. In short, the regulations predicate continued corporate existence on the corporation's retention of assets, and not on its "qualified" existence under State law. See *J. Ungar, Inc., supra.* Likewise, we predicate our conclusion that Tel-O-Tube continued in existence after September 1960 on its retention of the valuable claim against RCA and not on the fact of its limited existence under New Jersey law. See N.J. Stat. Ann, sec. 14:13–4.

Petitioners state in their brief that "respondent stipulated * * * that the total assets on September 30, 1960, were $12,277.21, consisting of cash in the amount of $7,979.80 and $4,297.41 of interest receivable; and that liabilities consisted of $4,500 of accrued expenses." It is clear that respondent did not make such a stipulation. The stipulation in question, contained on pages 6–8 of the stipulation of facts, shows respondent agreed that the books reflected that the above assets and liabilities were the only ones retained by the corporation and not that these were *in fact* the only assets and liabilities retained.

Petitioners rely on several cases in which dissolved corporations were held no longer liable for income taxes. Cf. *James Poro*, 39 T.C. 641 (1963); *Novo Trading Corporation* v. *Commissioner*, 113 F. 2d

**450**

320 (C.A. 2, 1940); *Commissioner* v. *Henry Hess Co.*, 210 F. 2d 553 (C.A. 9, 1953); and *Herbert* v. *Riddell*, 103 F. Supp. 369 (S.D. Cal. 1952). These cases, however, are readily distinguishable from the instant case for the reason that *all* the corporate assets had been distributed to the stockholders, and the corporations were completely liquidated and were not engaged in any of the substantial activities of the kind here being carried on by the trustees in dissolution. Rev. Rul. 61–191, 1961–2 C.B. 251, cited by petitioners, similarly does not apply to the facts of this case.

Next, we turn to petitioners' argument that an assignment of all of the corporate assets, including the notes and the claim, was effected by one of three alternative methods: (1) By the resolution adopted by the directors to dissolve; (2) by operation of law; or (3) by the closing journal entries dated September 30, 1960. Respondent determined that the corporation did not effectively assign either the notes or the claim until July 1961. The burden of proving otherwise falls on the petitioners. *Welch* v. *Helvering*, 290 U.S. 111 (1933).

Whether the corporation assigned the notes and claim presents a factual question to be determined according to the law of New Jersey. *Lang* v. *Commissioner*, 304 U.S. 264 (1938). The Supreme Court of New Jersey in *Brokaw* v. *Brokaw's Ex'rs.*, 4 Atl. 66, 68 (N.J. Ch. 1886), made the following comments with respect to the requirement of a valid equitable assignment:

Courts of equity * * * pay very little attention to form; their great desire being to give effect to the intention of the parties, and if that can be clearly discerned, they carry it into effect regardless of the method by which it is expressed. Any order, writing, or act which clearly indicates that the assignor intended to make over a fund belonging to him amounts in equity to an assignment of the fund.

While the rule of the *Brokaw* case is that no particular words of art are necessary to effect an equitable assignment, there nevertheless must be some clearly discernible manifestation of intention by the owner to transfer property instantly. Additionally, the owner must also divest himself of all title, interest, and control over the property being assigned. See *Weaver* v. *Atlantic Roofing Co.*, 40 Atl. 858 (N.J. Ch. 1898).

After a careful examination of the entire record, we conclude that the petitioners have not sustained their burden of proving that the notes and claim were assigned prior to the date determined by respondent.

Relying on *Novo Trading Corporation* v. *Commissioner*, *supra*, petitioners claim that the corporate resolution of dissolution constituted an assignment of all assets to the stockholders. In that case the corporation's three stockholders, who were also its only officers and directors, entered into a formal written agreement which provided

that they had "agreed to dissolve said corporation and liquidate its affairs" as set forth therein. The agreement further provided that certain enumerated assets "shall remain the property of and belong to" the three parties to the agreement, "each of them to share in the net proceeds equally." Among such assets was a claim against the United States. The Court of Appeals, in holding that the agreement operated to assign the claim, said that "It is immaterial that formal words of assignment are not used, if the intention to make a present transfer is clear." The *Novo Trading Corporation* case is distinguishable from this case because here there is not a shred of evidence that the resolution herein was intended as an assignment. The court in *Novo Trading Corporation* specifically found that the agreement was intended to operate as an assignment and that it "represented all the evidence of transfer which the shareholders thought necessary." 113 F.2d at 322. From the language of the resolution in this case directing the officers to "take all necessary action to effectuate" the dissolution, we infer that the directors contemplated further action by the officers to effectuate an assignment and that the directors did not intend to effect a present transfer of all the assets by the adoption of the resolution. Thus, on these facts, we view the resolution as no more than a mere mandate to the officers to assign and distribute the assets and not an assignment itself.

Petitioners assert that, under New Jersey law, the stockholders' proprietary interests in the corporation's assets, upon dissolution, are transformed into equitable rights, similar to those of a beneficiary of a trust to a prorata distributive share of the assets of the corporation and that they—not the corporation—are taxable on the income received with respect to the notes and claim after the date of dissolution. In support of this contention, they cite that portion of 16A Fletcher, Cyclopedia of Corporations, sec. 8134 (perm. ed.), which provides:

On the dissolution of * * * a corporation, whether by expiration of its charter, by a judgment of forfeiture, or otherwise, it is considered in equity, even in the absence of any statute, that its assets are held for the benefit of its stockholders or members, after payment of its debts, and will be so distributed by a court of equity when no other mode of distribution is provided by statute.[76] * * *

On dissolution, the legal title to land passes to the stockholders,[78] and title to the corporate property vests in the stockholders as tenants in common[79] * * *

[Footnotes omitted.]

Petitioners appear to argue, at least by implication, that the rule, set forth above, relating to the passage of title to the corporation's property upon dissolution, is followed in New Jersey. We do not agree. It is well established in New Jersey that legal title to the corporate assets, other than real property, passes on dissolution to the corporation's trustees in dissolution, i.e., the directors. N.J. Stat. Ann. sec. 14:13–5;

*State* v. *Fidelity Union Trust Co.*, 136 A. 2d 636 (N.J. 1957) ; *Fox* v. *Radel Leather Mfg. Co.*, 189 Atl. 366, 368 (N.J. Err. & App. 1937). Title to the corporation's real property remains in the corporation during the process of winding up. *Joachim* v. *Belfus*, 152 Atl. 161, 163 (N.J. 1930).

Section 14:13–5, N.J. Stat. Ann., as applicable for the year 1960, provided:

14:13–5.   Directors as trustees for winding up; powers

Upon the dissolution in any manner of any corporation, the directors shall be trustees thereof, with full power to settle the affairs, collect the outstanding debts, sell and convey the property and divide the moneys and other property among the stockholders, after paying its debts, as far as such moneys and property shall enable them. They may meet and act under the by-laws of the corporation, and, under regulations made by a majority of such trustees, prescribe the terms and conditions of sale of such property, and may sell all or any part for cash, or partly on credit, or take mortgages and bonds for part of the purchase price for all or any part of such property. They may sell, exchange or invest in bonds of the home owners' loan corporation or other agencies of the federal government for cash, securities or other instruments held by them as such trustees.

In case of a vacancy or vacancies in the board of directors of the corporation existing at the time of dissolution or occurring subsequent thereto, the remaining directors or director shall be the trustees or trustee thereof, as the case may be, with all of the above powers, and may do and perform all such other acts as shall be necessary to carry out the provisions of this title relative to the winding up of the affairs of the corporation and the distribution of its assets.

This provision gives the directors, as trustees, the authority to do those acts necessary to wind up the affairs of the corporation, such as the authority to sell the corporate assets and distribute the proceeds or distribute the assets directly to the stockholders, after all the corporate creditors are paid. We see nothing in the statute to indicate that a dissolution of a New Jersey corporation automatically accomplishes a distribution or assignment of all of the corporate assets to the stockholders of the corporation. Nor do we think *State* v. *Fidelity Union Trust Co.*, *supra*, cited by petitioners, supports such a proposition. The statute and the *Fidelity Union Trust* case relate to the question of the fiduciary relationship between the directors and stockholders rather than the passage of title.

Petitioners have cited no authority, and we have found none, which supports the proposition that the interest which the stockholders of a dissolved corporation have in the corporate assets under New Jersey law, prior to the actual distribution of the assets to the stockholders in liquidation, is sufficient to shift the incidence of Federal income taxation on income earned with respect to the assets from the corporation to the stockholders. See *Taylor Oil & Gas Co.* v. *Commissioner*, 47 F. 2d 108 (C.A. 5, 1931), certiorari denied 283 U.S. 862 (1931) ; and

*United States* v. *C. T. Loo*, 248 F. 2d 765 (C.A. 9, 1957), certiorari denied 356 U.S. 928 (1958). See also *Mrs. Grant Smith*, 26 B.T.A. 1178, 1184 (1932), where we said:

It is well established that the mere dissolution of a corporation does not effect a distribution of its assets among its stockholders, and furthermore that such a distribution is not effected by the turning over of the assets of the corporation to trustees in liquidation who may also be stockholders of the corporation.

Nor have petitioners pointed to any authority that dissolution, in and of itself, effects a distribution or assignment of corporate assets to stockholders under New Jersey law.

Finally, petitioners refer to the adjusting book entries as evidence that the corporation assigned all its assets to the stockholders. We fail to see how the book entries could in any way operate as an assignment of the antitrust claim, when they contain absolutely no reference to it. Accordingly, such entries did not constitute an assignment of the claim.

With respect to the notes, the book entries are some evidence of an assignment and are entitled to some weight; however, they are not determinative. See *Eli D. Goodstein*, 30 T.C. 1178, 1190 (1958). There is no direct testimony in the record that the book entries were intended to operate as an assignment of the notes. Hence, we believe the presence of contrary circumstances, giving rise to the inference that no assignment of the notes was in fact made, outweighs the significance of the book entries.

The evidence plainly shows that the corporation continued to exercise dominion and control over the notes. It retained title to the notes and the right to bring suit for collection in the event of default; it continued to collect and deposit the interest income in its account; it continued to distribute such income to each of the petitioners equally in accordance with their respective stockownership. Such continuous exercise of dominion and control over the notes by the corporation is inconsistent with the notion that it assigned them and indicates that it did not divest itself of control over the notes, as required by *Weaver* v. *Atlantic Roofing Co., supra*, for a valid equitable assignment thereof. In addition, the fact that the corporation distributed the interest income to the petitioners equally in accordance with their stockownership, and not in accordance with their respective unequal interests in the notes as recorded in the journal entries, creates the strong inference that the petitioners received the distributions because of their status as stockholders and not as transferees of the notes.

Another factor inconsistent with petitioners' position is the letter of July 12, 1961, by London, the accountant, to each of the petitioners. It reads, in pertinent part, as follows:

In order to complete the liquidation of Tel-O-Tube * * * the $100,000.00 invested in the notes of Manufacturers Credit Corp. are to be disbursed as follows:

| | |
|---|---:|
| The Estate of Samuel Antkies | $35,476.66 |
| Nat Malamuth | 31,054.12 |
| Sidney Messer | 33,469.22 |
| Total | 100,000.00 |

We agree with respondent that "had the notes been distributed and the corporation liquidated on September 30, 1960, there would have been no need for any instruction on July 12, 1961, respecting the proper manner of their distribution in order to complete the liquidation." It is difficult to believe that the notes could have been assigned prior to July 12, 1961, and London not be aware of it. London played an essential part in winding up the affairs of the corporation, and he was the one who made the entries now alleged to constitute an assignment of the notes. Despite his active participation in bringing about the corporation's dissolution and liquidation, he was not aware of any assignment of the notes. The inference we draw from this is that the entries were not intended by the parties to operate as an assignment. This is supported by London's testimony. At one point on cross-examination he testified that a decision was made not to assign the notes until the corporation's liability to RCA was discharged. Although this testimony was somewhat equivocal, petitioners' counsel made no effort to clarify it on redirect examination.

Furthermore, the actual face amount of the notes received by each petitioner on August 1, 1961, differed from their respective interests in the notes, as recorded on the corporation's books:

| Petitioner | Interests in notes per book entries | Actual amounts of notes received |
|---|---:|---:|
| Estate of Samuel Antkies | $35,476.66 | $35,000 |
| Nat Malamuth | 31,054.12 | 35,000 |
| Sidney Messer | 33,469.22 | 30,000 |

Such unexplained discrepancies fortify our view that the book entries were not intended to constitute an assignment of the notes.

Petitioners rely on *Gensinger* v. *Commissioner*, 208 F. 2d 576, 582 (C.A. 9, 1953), where the Court of Appeals, in holding that the taxpayer, the sole stockholder, adequately manifested his intention to distribute to himself certain crops as liquidating dividends, stated:

Where both the power to distribute property and the sole equitable right to it are held by *a single person*, who is both "distributor" and "distributee", and *the only person with any interest in the matter*, we see no reason why any more should be required to prove a "distribution" than that the person intended to presently take the property as his own, and that this intention was manifested in some manner.[4] [Emphasis supplied. Footnote omitted.]

We note that the "power to distribute property" and the "equitable right to it" are *not* held herein by a single person or even by the same persons, that petitioners are not the only persons "with any interest in the matter," and that the intention to effect an assignment of the notes and claim has not been adequately manifested. The directors, as statutory trustees, held the power to distribute the property and had a substantial "interest in the matter," because they are personally liable to a creditor of the corporation if they distribute all the assets without making provision for his debt. See *Chorpenning* v. *Yellow Cab Co.*, 167 Atl. 12 (N.J. Ch. 1933). Since RCA was a creditor of the corporation, it also had an equitable right to its property. *State* v. *Fidelity Union Trust Co.*, *supra* at 640. Given these facts and the law of New Jersey, petitioners have failed to convince us that the directors, as statutory trustees, ever intended to distribute the notes and claim to the stockholders prior to July 1961. Consequently, we sustain respondent's determination that the corporation retained title to, and ownership of, the notes until July 1961 and that the interest income of $13,177.08 earned with respect to the notes was taxable to it.

Our determination that the corporation retained the claim raises the further question of the tax consequence to the corporation of the proceeds from the settlement thereof. Petitioners, for the first time in their brief, advance the alternative argument that the corporation is not taxable upon the proceeds from the settlement of the claim by reason of the nonrecognition-of-gain provision contained in section 337. In our judgment section 337 is inapplicable to the facts of this case for a number of reasons, only two of which we need mention. It is well settled that issues not raised by the pleadings, but argued for the first time in the briefs, should not be considered. *William Greenberg*, 25 T.C. 534 (1955). Respondent takes the position in his reply brief that this issue has not been properly raised. We agree. Rule 7 of the Court's Rules of Practice requires that the petition contain clear and concise assignments of each and every error alleged and statements of the facts upon which the petitioner relies to sustain each assignment of error. The petition herein contains no assignment of error based on the application of section 337. The facts upon which petitioners rely to sustain the assignment of error, as set out in the petition, are vastly different from those necessary to sustain the contention that section 337 is applicable as to the proceeds from the settlement of the claim. To permit petitioners to raise the issue at such a late date would obviously result in unfairness and surprise to respondent. Therefore, we think the issue has not been properly raised. See *Eleanor C. Shomaker*, 38 T.C. 192, 201 (1962); *George R. Kemon*, 16 T.C. 1026, 1034 (1951). But, in any event, petitioners have failed to establish that the corporation dis-

tributed all of its assets within the 12-month period required by section 337(a)(2).[3] There is no evidence as to the date of the final liquidating distribution; and there is no evidence as to the assets retained to pay liabilities or the nature of the liabilities. We do not infer, as petitioners do, that "respondent in his statutory notice of liability [sic] had admitted and set forth the substantive statutory requirements" of section 337.

The proper tax treatment of amounts received in a settlement of an antitrust claim "depends upon the nature of the claim and the actual basis of recovery." *Ralph Freeman*, 33 T.C. 323, 327 (1959). As we said in *Estate of Mabel K. Carter*, 35 T.C. 326, 332 (1960), affd. 298 F. 2d 192 (C.A. 8, 1962), certiorari denied 370 U.S. 910:

> The starting point in cases involving the taxability of amounts received as the result of litigation or the settlement thereof is, in general, the answer to the question, "In lieu of what were the amounts paid under the settlement received?"

See also *Raytheon Production Corporation* v. *Commissioner*, 144 F. 2d 110 (C.A. 1, 1944). Generally, an important consideration is the nature of the basic claim from which the compromise settlement is realized. If the settlement proceeds are for lost profits or earnings, they are taxable as ordinary income on the theory that the earnings and profits themselves would have been fully taxable. On the other hand, if the proceeds are for the destruction of the taxpayer's business or goodwill, then they represent a return of capital and are taxed accordingly.

Respondent determined that the corporation realized taxable income from the return of the notes and the cancellation of indebtedness to the extent that it received a tax benefit from the accruals and deductions of the royalties from 1953 through 1957. See *Tygart Valley Glass Co.*, 16 T.C. 941, 951 (1951); *Buck Glass Co.* v. *Hofferbert*, 176 F. 2d 250, 253 (C.A. 4, 1949). This determination is, of course, presumptively correct, and petitioners have the burden to show error therein by a preponderance of the evidence. They have failed to do so. The record contains no evidence as to what the proceeds from the settlement of the claim were given in lieu of. Accordingly, we uphold respondent's determination.

---

[3] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

   (a) GENERAL RULE.—If—
      (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
      (2) within the 12-month period beginning on the date of the adoption of such a plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

To reflect the concession made by respondent and the conclusions reached herein,

*Decisions will be entered under Rule 50.*