ROBERT F. CHRISTENSEN AND EILEEN F. CHRISTENSEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Christensen v. Commissioner
Docket No. 20962-80.
United States Tax Court
T.C. Memo 1984-197; 1984 Tax Ct. Memo LEXIS 470; 47 T.C.M. (CCH) 1558; T.C.M. (RIA) 84197; April 23, 1984. Robert F. Christensen, pro se. Pamela V. Gibson, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in the amounts of $2,909 and $3,343 in petitioners' joint Federal income tax for 1977 and 1978, respectively. The issues for decision are: 1. Whether petitioners are entitled to deduct a loss under section 165(a)[1] on the sale of their house in 1977; 2. Whether petitioners *473 are entitled to deduct rental losses in 1977 and 1978 incurred in connection with a house located in Campton, New Hampshire; 3. Whether petitioners are entitled to a home office deduction for 1977 and 1978 under section 280A; 4. Whether petitioners have substantiated, as required by section 274(d), the claimed 1977 and 1978 expenses for entertainment and business gifts; 5. Whether petitioners are entitled to casualty loss deductions in 1977 and 1978 with respect to an automobile; and 6. Whether the issues of petitioners' right to compute their tax by using the income averaging provisions and their right to claim additional automobile expenses are properly before the Court.
We shall first state the general facts and then combine our findings of fact and opinion with respect to each issue. General Facts
Petitioners are husband and wife. They filed timely joint Federal income tax returns for the years in question with the Internal Revenue Service Center, Andover, Massachusetts. At *474 the time they filed their petition in this case, they resided in Danville, Vermont. 1. Loss on Sale of House
Sometime prior to 1976, petitioners moved to Quebec so that petitioner Robert Christensen (petitioner) could go into business with a Canadian citizen. When business fell off, petitioner lost his job and was unable to make the mortgage payments on the house petitioners had bought in Quebec. Petitioners listed the property for rental or sale with two realtors in late 1976, but the bank foreclosed on petitioners' mortgage in May 1977, before the house was ever rented or sold. In their tax return for 1977, petitioners claimed a capital loss deduction on the loss of the house due to the foreclosure. Respondent denied this deduction on the ground that the loss was a nondeductible personal loss.
In the case of an individual, losses not resulting from casualties or theft are deductible only if they are incurred in a trade or business or in a transaction entered into for profit. Sec. 165(c). Losses attributable to the sale of a family residence are nondeductible personal losses. *475 Sec. 262; Austin v. Commissioner,298 F.2d 583, 584 (2d Cir. 1962), affg. 35 T.C. 221 (1960); sec. 1.262-1(b)(4), Income Tax Regs. Clearly, the house in question was a personal asset acquired for family residential use rather than business or investment property for most, if not all, of the time that petitioners owned it. The question is whether its status was changed to business or investment property by their efforts to rent or sell it during the few months before the mortgage was foreclosed. This Court has consistently held that, to effect a conversion from personal use to profit-motivated purposes, a taxpayer must do more than list the old residence for rent, for sale, or for sale or rent. Grammer v. Commissioner,12 T.C. 34 (1949); Horrmann v. Commissioner,17 T.C. 903 (1951); Morgan v. Commissioner,76 F.2d 390 (5th Cir. 1935), affg. a Memorandum Opinion of this Court; Rumsey v. Commissioner,82 F.2d 158 (2d Cir. 1936), affg. a Memorandum Opinion of *476 this Court. In this case, the property was never rented. Petitioners offered the property immediately for sale upon their departure from Quebec, thus indicating an intent to reap whatever gain or loss had been realized while they occupied the property as a residence. Cf. Newcombe v. Commissioner,54 T.C. 1298, 1301-1302 (1970). Accordingly, we hold that the listing of the property for sale or rent in the present case did not change its status as a personal asset, and that any loss incurred on foreclosure of the mortgage was a nondeductible personal loss. [2] Cf. Bolaris v. Commissioner,81 T.C. 840 (1983). *477 2. Rental Losses
Petitioners own a house in Campton, New Hampshire, which they had built in 1971 on land acquired in 1970. They acquired the property as a vacation home-investment and have reported rental income from it since its acquisition. In 1976, after petitioner lost his job in Quebec, petitioners' family lived in the Campton house while he looked for a job in the United States. In an interview with an Internal Revenue Agent, petitioner indicated that he lived in the Campton house throughout the month of January 1977, until moving into a house in Danville, Vermont, in early February of that year. Petitioner listed the Campton house as his address on the resume he submitted to Colt Industries (Colt) when he was interviewed for a job with that company in late 1976 or early 1977. When he began his new job with Colt in St. Johnsbury, Vermont, he gave the Campton house as his address when he filled out a Form W-4, Employee's Withholding Allowance Certificate, on January 4, 1977. The Campton house was carried as petitioner's address on his employer's records for over a year, until the records were changed on February 13, 1978, to show the house in Danville, Vermont, *478 as petitioner's address. Colt reimbursed petitioner for some of the expenses of traveling to St. Johnsbury for his interview and of relocating in the St. Johnsbury area. Petitioner submitted expense reports claiming the expenses of four round trips between Campton and St. Johnsbury during December 1976 and additional round trips on January 15, 22, and 29, 1977. Petitioner also claimed reimbursement for telephone calls from Campton to St. Johnsbury on January 3, 7, and 9, 1977. He also claimed reimbursement for the expenses of round trips between Campton and Danville on February 26, March 12, and April 3, 1977. From this evidence, we find that petitioners used the Campton house for personal purposes for more than 17 days during 1977. In their tax returns for the years in question, petitioners claimed the following amounts of rental income and related expenses with respect to the Campton house: 1977
1978
Rental income
$2,686 $3,975 Depreciation
(3,270)
(2,730)
Other expenses
(7,668)
(7,342)
Net loss
($8,252)
($6,097)
The Campton house was rented for 162 days in 1977. Respondent disallowed the 1977 loss based on his conclusion *479 that the loss for that year was not deductible due to the provisions of section 280A. Respondent disallowed the 1978 loss for lack of substantiation. A.The 1977 Deduction
Section 280A(a) provides generally that no deduction shall be allowed to an individual taxpayer will respect to a dwelling unit which is "used by the taxpayer during the taxable year as a residence." Section 280A(b) provides an exception for expenses, such as interest and real estate taxes, which are deductible without regard to their connection with the taxpayer's trade or business or income-producing activity. Section 280A(c)(3) provides an exception for expenses attributable to the rental of the dwelling unit, but section 280A(c)(5) provides that, in the case of the rental of a dwelling unit which is "used by the taxpayer during the taxable year as a residence" the deductions allowable by reason of the rental shall not exceed the excess of the gross rental income over the expenses, such as interest and taxes, which are allowable without regard to the rental use. In other words, section 280A does not affect *480 the deduction of items, such as interest and taxes, which are allowed by other Code sections without regard to their connection with the taxpayer's business or income-producing activity.What the section prohibits, and what is at issue here, is the deduction of a net rental loss with respect to a house which the taxpayer has used during part of the taxable year as a residence, where that loss is created by deductions for items, such as depreciation, which are allowable only because of the rental use.
A taxpayer "uses a dwelling unit during the taxable year as a residence" if he uses the unit for personal purposes for a number of days exceeding the greater of 14 days or 10 percent of the number of days during the year that it is rented at a fair rental value. Sec. 280A(d)(1). Because the Campton property was rented out for 162 days during 1977, the limitations of section 280A are applicable if petitioners used the property for personal purposes for more than 17 days. The parties are in dispute only *481 as to whether petitioners used the property for that many days. [3] We have found as a fact that petitioners did use the Campton property for personal purposes for more than 17 days during 1977, and we sustain respondent's denial of the loss claimed for that year. B. The 1978 Deduction
Respondent does not contend that the rental loss claimed by petitioners for 1978 is limited by section 280A. As noted above, the loss was initially denied for lack of substantiation. Respondent now concedes that the expenses have been substantiated except for commission expenses of $725 and automobile expenses of $591. Petitioners have introduced no evidence with respect to the commission expenses, and we sustain respondent's denial of the claimed deduction. With respect to the automobile expenses in connection with the rental property, petitioners have introduced into evidence their own computation of local automobile expenses, *482 but have produced no receipts or other underlying documentation. Using our best judgment on the basis of the record before us, we find that petitioners incurred deductible local automobile expenses in connection with their rental property in the amount of $400. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). 3. Home Office Deduction
During the years in question, petitioner was employed as manager of international marketing by Colt in St. Johnsbury, Vermont. About 75 percent of the international business of petitioner's division was conducted with customers in Southeast Asian countries. Due to time differences, it was inconvenient for petitioner to make telephone calls to those countries from the office provided by his employer during regular business hours in Vermont, and he usually made those calls from his home. Petitioner also met with customers in his home when meetings at his jobsite extended beyond normal business hours and the heating or air-conditioning was turned down for the night. In their tax returns for the years in issue, petitioners claimed deductions for the "business use of home." Respondent denied these deductions in their entirety, *483 based on his determination that petitioners failed to satisfy the requirements of section 280A(c).
Section 280A(a) provides generally that no deduction shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. An exception to this general rule of nondeductibility is found in section 280A(c), which provides as follows: (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.-- (1) Certain business use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- * * * (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business * * * * * * In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. Respondent argues that petitioner has failed to demonstrate that any portion *484 of his home was used "exclusively * * * on a regular basis" as a place of business used by customers to meet with him as required by section 280A(c)(1)(B). We agree with respondent and sustain his disallowance of the claimed home office deductions. The business-related telephone calls made and received by petitioner in his home do not constitute the use of the home to meet with customers as required by section 280A(c)(1)(B). That section has been interpreted to require the physical use of the home office by patients, clients, or customers in meeting or dealing with the taxpayer. Frankel v. Commissioner,82 T.C. 318 (1984). The only physical uses of the home office by customers which petitioner alleges are the meetings with visiting customers. Petitioner, however, has introduced no evidence as to how often these meetings occurred; he has merely made vague statements that they occurred "frequently," or "with sufficient frequency." In these circumstances, we are unable to conclude that petitioner has demonstrated that his clients used his home "on a regular basis" as required *485 by section 280A(c)(1)(B). Incidental or occasional use will not suffice. We hold for respondent on this issue. See Jackson v. Commissioner,76 T.C. 696, 700-701 (1981), in which the taxpayer's similar vagueness as to the frequency of her meetings with clients in her home office also caused the claimed deduction to be disallowed. 4.Entertainment and Business Gifts
Of the deduction claimed under the heading "business use of home," $245 for 1977 and $165 for 1978 involved alleged expenses of entertainment and business gifts rather than the expenses of maintaining petitioners' house. Respondent denied these deductions in their entirety for lack of substantiation. Section 274(d) provides that no deduction shall be allowed for the expenses of entertainment or gifts unless the taxpayer substantiates various aspects of the expense, including its amount and business purpose, by "adequate records or by sufficient evidence corroborating his own statement." Petitioner introduced no evidence with respect to these deductions, and we are compelled to sustain respondent's disallowance *486 of them. 5. Casualty Losses
Petitioner claimed casualty loss deductions for each of the years in question based on damage to his car in separate accidents. Petitioner read into the record estimates from garages indicating that it would cost $1,012.73 to repair the damage caused by the 1977 accident and $409.89 to repair the damage caused by the 1978 accident. The estimates themselves were not offered as evidence. Apparently no repairs were made until 1978, when, petitioner explained, the damage of the second accident and "some smaller items on the first accident" were repaired at a cost of $626.53. Petitioner explained further that he received an insurance reimbursement of $253.32 with respect to the 1977 accident, but filed no claims with respect to the 1978 accident because he was afraid that doing so might cause his premium to be raised. In his tax returns, petitioner reported the two casualties as follows: 1977
1978
Loss before insurance reimbursement
$1,013 $641 Insurance reimbusement
(253)
(253)
$ 760 $388 $100 Floor
(100)
(100)
Deduction
$ 660 $288 Petitioner testified that he applied the insurance reimbursement *487 of $253 to both accidents by mistake, there having been in reality only one reimbursement. Respondent determined that petitioner had failed to establish that the amount of the 1977 loss had exceeded the amount of the insurance recovery plus the policy deductible of $250. Accordingly, respondent allowed the claimed deduction only to the extent of $150 (the unreimbursed loss of $250 less the $100 floor). Respondent determined that petitioner had failed to establish that any accident occurred in 1978, and denied the deduction claimed for that year in its entirety. The burden is on petitioners to establish that they are entitled to deduct the amounts claimed. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). There is no specific evidence as to the value of the automobile before and after the accidents or the adjusted basis of the automobile. Sec. 1.165-7(b), Income Tax Regs.The use of repair estimates alone as the measure of a loss has not been *488 regarded as persuasive by this Court. Farber v. Commissioner,57 T.C. 714, 719 (1972). In the present case, petitioner did not introduce even the estimates themselves into evidence, but merely read the amounts thereof into the record. Therefore, the Court is unable to examine the estimates for whatever help they may have provided in determining the validity of respondent's assertion that "with the lack of independent proof of either accident, or of actual repairs made, it seems as likely as not that the 1977 and 1978 repair estimates were to remedy the same damage." Similarly, petitioner has introduced no canceled checks or police accident reports relating to the claimed casualties.In these circumstances, we are unable to find that petitioner is entitled to deductions greater than those allowed by respondent, and we sustain respondent's determinations in this regard.
6. Income Averaging and Additional Automobile Expenses
In each of their returns for the years in question, petitioners computed their tax liability by use of the tax tables. Petitioners now argue that their tax liabilities for those years should be computed by use of the income averaging provisions *489 of sections 1301--1305. This issue was not raised in their petition and is not properly before the Court.[4]Messer v. Commissioner,52 T.C. 440, 455 (1969), affd. 438 F.2d 774 (3d Cir. 1971); Rule 34(b)(4). Petitioners also claim that they are entitled to deduct automobile expenses in excess of those claimed in their returns. This issue, too, was not raised in their petition, is not properly before the Court, and will not be considered. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. All Rules references are to the Tax Court Rules of Practice and Procedure.↩
2. We note that, even if petitioners had converted the house to business use, their basis for determining their loss on foreclosure would be the lower of their adjusted basis or the property's fair market value at the time of conversion. Sec. 1.165-9(b)(2), Income Tax Regs.↩ The record does not establish the house's fair market value at the purported conversion date, but petitioner testified that, due to the depressed condition of the Quebec economy which caused him to lose his job, "property values dropped about 40 percent." The record, in short, does not demonstrate that the loss on foreclosure was not due to a decline in the property's value which occurred before the purported conversion to business use.
3. There is no dispute as to the mechanics of computing the sec. 280A limitation if it is determined that the section applies at all. Compare Bolton v. Commissioner,694 F.2d 556 (9th Cir. 1982), affg. 77 T.C. 104↩ (1981).
4. Even if the issue were before the Court, petitioners have introduced no evidence as to their taxable income over the base period. Therefore, they have not demonstrated that the benefits of income averaging are available to them, as the burden was on them to do. Sharvy v. Commissioner,67 T.C. 630, 634 (1977), affd. 566 F.2d 1118↩ (9th Cir. 1977).