MAX FRANKEL AND TOBIA FRANKEL, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8872–81.     Filed February 28, 1984.

*Richard G. Cohen* and *Steven W. Madsen*, for the petitioners.
*Barbara A. Matthews*, for the respondent.

OPINION

NIMS, *Judge*: Respondent determined deficiencies in petitioners' income taxes as follows:

| Year | Amount |
| --- | --- |
| 1977 | $689.94 |
| 1978 | 843.94 |

After certain concessions, the issues for decision are whether (1) petitioners are entitled to home office deductions for 1977 and 1978 under section 280A[1] based upon New York Times clients' or customers' use of the home office as a place of business in meeting or dealing with petitioner Max Frankel in the normal course of his trade or business, and (2) the amount of the home office deduction for 1978 to which petitioners are entitled based upon petitioner Tobia Frankel's use of the home office in such year.

To facilitate the disposition of the case, the Court will amalgamate its findings of fact and discussion of the legal issues.

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioners were residents of New York. They duly and timely filed joint income tax returns for 1977 and 1978.

During the taxable years in issue, petitioners resided in a two-story private home in which a room on the first floor was used as a home office. Petitioners incurred the following expenses in connection with the maintenance of the home office:

| Expense | 1977 | 1978 |
|---|---|---|
| Depreciation | $689.28 | $654.82 |
| Heating and lighting | 442.20 | 431.06 |
| Maintenance | 74.13 | 425.00 |
| Security service | 33.75 | 33.75 |
| Insurance | 131.75 | 131.75 |
| Total | 1,371.11 | 1,676.38 |

The home office was used exclusively by petitioners, and by no other members of their family, as a home office and was not used by them for personal purposes.

At all relevant times, petitioner Max Frankel was employed as the editor of the editorial pages of the New York Times. The offices of the Times were located at 229 West 43d Street, New York, N.Y.

As the editor of the editorial pages, Mr. Frankel was the newspaper's chief editorial writer and was also required to

---

[1] All section references are to the Internal Revenue Code of 1954 as in effect during the years in issue, unless otherwise noted.

assign the work schedules to the approximately 35 employees on his staff. He also edited the articles written by these staff members and performed the other administrative duties normally associated with his position. The Times provided Mr. Frankel with an office on its premises.

On weekdays, Mr. Frankel customarily began work in his office at home (which was located in the Bronx) where he would spend up to an hour reading the morning newspaper, clipping materials, writing memoranda suggesting followup editorials or ideas, and engaging in similar activities. After that, he would drive to the offices of the Times in midtown New York, and remain there until 7 p.m. or so. After that, he would return to his home and would customarily do some additional work in his home office in the evening. From time to time, he would attend evening functions, most of which were connected with his work as a New York Times editor.

During the years in issue, two main editions of the New York Times were published each day. The first edition went to press at approximately 9 p.m. and the second at approximately 11:30 p.m. Changes were routinely made in the second edition from two to four times a night. Although it was hoped that the pages for which Mr. Frankel was responsible were in final form when he left the Times offices for the night, more often than not, changes had to be made in the later edition, about which Mr. Frankel had to be consulted.

When the Frankels commenced looking for a house in 1973, they sought one that would accommodate their needs for a home office. And they specifically purchased the house they occupied during the years in question because it contained a room which could be used for such a facility.

Petitioners' home office was furnished with two desks, two desk chairs, two typing credenzas, three long, waist-high file cabinets, one conventional file cabinet, a bookcase, a sofa, two walk-in closets containing high file cabinets, a small, old black-and-white television set used by Mr. Frankel to watch Sunday public affairs interview shows and such programs as Presidential speeches and press conferences, a telephone, and a dictating machine. Mr. Frankel also kept basic reference books, such as almanacs, atlases, and congressional directories in the home office for use in writing editorials, revising

editorials that had been overrun by events or otherwise called into question, and planning future editorials.

Mr. Frankel also used the home office during weekends in connection with the weekend editions of the Times.

During the years in issue, Mr. Frankel spoke with other employees of the Times practically every night on the telephone from his home office. The night editor almost routinely consulted Mr. Frankel every night by telephone.

During the years in issue, Mr. Frankel also had telephone conversations from the home office with nonemployees of the Times, relating to his duties as editor of the editorial pages. These individuals made up the bulk of the people with whom Mr. Frankel spoke on the telephone from the home office. The individuals with whom Mr. Frankel spoke included prominent politicians at the national, State, and local levels, labor leaders, and other leaders of the community. Such calls were initiated both by Mr. Frankel and by such nonemployee individuals. Sometimes these individuals would call Mr. Frankel at home rather than at the offices of the Times because such individuals had been tied up during the day or because Mr. Frankel had been unable to speak to them during the day. At other times, such persons would call Mr. Frankel at home because they believed he would be a more receptive listener there than he would be in the more hectic atmosphere of his office at the Times. Such individuals called Mr. Frankel because they wanted to discuss their views and insure that the Times was aware of their positions. Mr. Frankel accepted calls from such people because he felt that they had information he could use and because they represented important constituencies of the country, the community, and the Times, whose views Mr. Frankel felt he must be exposed to in order to properly serve the readers of the Times. The calls that Mr. Frankel made from the home office were made for the same general reasons that prompted him to accept calls from such people.

The telephone in the home office had two lines with separate numbers, namely, the Frankels' personal family line and a line used for the business of the Times. Of the five other telephone instruments in the Frankel home, two—the one in the kitchen and the one next to Mr. Frankel's bed—had both

the family line and the Times' line, and three had only the family line.

The Times' telephone line in the Frankel home was unlisted. Such number was listed only in the internal memoranda of the Times. The Times paid for the unlisted telephone line.

In order for Mr. Frankel to have done most of the work he did in the home office at the offices of the Times, he would have had to have stayed at the midtown offices of the Times almost 24 hours per day.

In January, February, and part of March 1978, Mrs. Frankel was involved in preparing a report for the U.S. Comptroller of the Currency. Mrs. Frankel performed consulting services for the Comptroller pursuant to a written contract entered into on January 26, 1978, to perform a study pertaining to the effect of 12 U.S.C. section 84 on centrally planned economies. She began actual work on the study in January 1978, and the preparation of the study was a full-time endeavor for Mrs. Frankel at that time.

Preparing the study involved doing research in libraries; interviewing people in various parts of the business, academic and banking worlds; reading books; and taking notes. She kept her notes and research materials in the home office and wrote the study in the home office.

Mrs. Frankel worked full time on the study until she took it to Washington on March 10, 1978. The version which she submitted to the Comptroller on that date was a draft, and after submitting the draft, Mrs. Frankel continued to work part time on revisions. The revisions, performed at the home office, involved correcting typographical mistakes, incorporating new factual materials, editing, rewriting parts of the study, adding new material to the appendices, etc. Mrs. Frankel sent the Comptroller a revision of the study in the spring of 1978 and a further revision in August 1978. She continued to work on the revisions at least through November 1978. Mrs. Frankel received $5,250 for the study. The fee was based upon the Comptroller's estimate that the study would require 35 days at a value of $150 per day. Mrs. Frankel was not provided with an office by the Comptroller in which to keep or organize her notes, read research material, or write the study.

In *Green v. Commissioner*, 78 T.C. 428 (1982), revd. 707 F.2d 404 (9th Cir. 1983), we held that a real estate executive who maintained an office in his home to handle frequent after-office-hours telephone calls was entitled to a deduction for the cost of maintaining his home office; we held that the office was exclusively and regularly used by the employer's clients and for the convenience of the taxpayer's employer. In doing so, we found that the taxpayer had met the requirements of section 280A(c) (1) (B), which permits the deduction if the home office is exclusively used on a regular basis "as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business." (The "flush" language at the end of section 280A(c) (1) requires that "in the case of an employee, the preceding sentence shall apply only if the exclusive use referred to * * * is for the convenience of his employer.")

In the case before us now, petitioner urges us to adhere to our position in *Green* notwithstanding the reversal of our decision by the Ninth Circuit Court of Appeals, while respondent asks that we defer to the Ninth Circuit's higher wisdom and no longer apply the position we took in *Green*.

The provisions of section 280A(c)(1)[2] are reproduced below. Respondent does not question that Mr. Frankel exclusively used the home office on a regular basis as a place of business. Petitioners, on the other hand, admit that the home office was not used by "patients, clients, or customers" in "meeting" with Mr. Frankel. While there are some other differences of opinion, the most hotly contested point of contention is whether the home office can be said to have been used by "patients, clients, or customers" of the Times in "dealing" with Mr. Frankel.

---

[2]SEC. 280A(c). EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE.

    (1) CERTAIN BUSINESS USE.—Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis—

        (A) [as] the principal place of business for any trade or business of the taxpayer,

        (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

        (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

    In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.

We will deal with Mrs. Frankel's 1978 use of the home office in due course.

In addition to the dealing question, which we turn to subsequently, we must also determine whether those individuals with whom Mr. Frankel talked on the telephone fall within the rubric "patients, clients, or customers," and whether the exclusive use of the home office by Mr. Frankel was on a regular basis and for the convenience of his employer, the New York Times.

Respondent argues that the individuals with whom Mr. Frankel spoke on the telephone—elected officials, public figures, and employees of the Times—do not meet the intent of the statutory phrase "patients, clients, or customers." On brief, he urges that "In the case of an employee [e.g., Mr. Frankel] of a newspaper, the customers or clients that could meet or deal with such employee would be the newspaper's readers and subscribers. * * * As for the employees of the newspaper, which made up the bulk of the telephone calls, they were calling Mr. Frankel in connection with their employment, not as customers or clients of the New York Times."

We think respondent's view is unnecessarily restrictive, and also not entirely consistent with the evidence in this case. The record does not bear out respondent's assertion that communications from Times' employees made up the bulk of the telephone calls. Furthermore, we might observe that elected officials and public figures would eminently qualify as "readers and subscribers" of the Times. We would ask respondent why, if such were not the case, those individuals would know or care what was printed in the Times.

In any event, as we pointed out in *Green* at page 434:

No doubt the typical situation the drafters of section 280A(c)(1)(B) had in mind was the doctor, the dentist, or the lawyer who maintains a home office, in addition to his principal office, where he meets with patients or clients. The meeting-or-dealing provision for allowance, however, is not limited to professional persons, and, by imposing a "convenience of his employer" requirement, Congress specifically recognized that an employee may qualify.

Thus the phrase "patients, clients, or customers" is not to be narrowly limited to self-employed professionals, but rather is to be construed to include the types of people (exclusive, perhaps, of other employees) with whom employees customari-

ly deal in the ordinary course of their employers' trades or businesses. We might also point out that Webster's New International Dictionary (2d ed.) defines "client," among other definitions, as a person served by or utilizing the services of a social agency or a public institution. Thus a political figure seeking to influence the editorial policy of the New York Times, undoubtedly at least a quasi-public institution, would come within the definition of the word "client."

Since the Commissioner has issued no regulations, nor do we find anything in the legislative history of section 280A to suggest anything to the contrary, we think the elected officials and the public figures with whom Mr. Frankel spoke on a regular basis qualify as clients of the Times for the purposes of this case.

Mr. Frankel testified that, during the years in issue, he spoke over the telephone in the home office with prominent politicians at the national, State, and local levels and also labor leaders and leaders of the community in general. Such discussions averaged one per night, and each such discussion might require several actual telephone calls to complete. Unquestionably these contacts were sufficiently frequent to meet the statutory requirement of use of the home office on a regular basis.

Respondent further argues that Mr. Frankel's use of the home office did not meet the "convenience of his employer" test of section 280A(c). We do not agree. The facts which we have found in this case lead inexorably to the conclusion that, during the years in question, Mr. Frankel was on duty almost 24 hours a day, 7 days a week, 365 days a year. Under these circumstances, we cannot believe, as respondent apparently would have us do, that Congress intended a taxpayer in a job like Mr. Frankel's to sleep on an Army cot in his employer's office to fulfill his employment responsibilities. In *Green* we held, at page 435, that "As a condition of his employment [the employer] required [taxpayer] to agree to take the telephone calls at his home." We think the same can be said of the relationship between Mr. Frankel and his employer in the case before us. And as stated, the private line which Mr. Frankel used for business in his home office was maintained and paid for by the Times. This fact certainly adds some weight to petitioners' convenience-of-employer argument.

Mr. Frankel testified (and we found his testimony to be completely credible) that on the evenings when he was not required to attend public or private functions on business, he worked from 3 to 4 hours in his home office, and always on weekends, on matters exclusively involving his position as editor of the editorial pages of the New York Times. As indicated by the Second Circuit Court of Appeals in *Drucker v. Commissioner*, 715 F.2d 67 (2d Cir., Aug. 19, 1983), revg. 79 T.C. 605 (1982), on another issue, the use of the home office by Mr. Frankel was not purely a matter of personal convenience, but rather, it was a business necessity. As such, the use of the home office was for the convenience of the employer, as the meaning of those words of art has developed over a period of time. See cases cited in *Drucker*.

We turn now to the crucial question before us, and while petitioners make out an appealing case, we conclude that we must agree with the Ninth Circuit, and thus with respondent, that telephonic contacts with "patients, clients, or customers" alone, without the added element of physical presence, do not meet the "meeting or dealing" requirements of section 280A(c)(1)(B).

Our opinion in the *Green* case effectively sets the scene for our further consideration of the meeting-or-dealing question here, and rather than repeating all that we said there, we use *Green* as a point of departure here. The legislative history of section 280A is fully explicated in *Green*, and no useful purpose would be served by repeating it.

Insofar as section 280A(c)(1)(B) is concerned, it is clear that a number of criteria must be met to entitle the taxpayer to the home office deduction. In the case of the taxpayer who is an employee, his home office must be:

(1) exclusively used
(2) on a regular basis
(3) as a place of business used by his employer's patients, clients or customers
(4) in meeting or dealing with the taxpayer
(5) in the normal course of his trade or business;
(6) and the exclusive use must be for the convenience of his employer.

As the previous discussion indicates, we are satisfied that petitioners' home office was exclusively used on a regular basis as a place of business in the normal course of Mr. Frankel's trade or business, and the exclusive use was for the convenience of his employer, the New York Times. We are also satisfied that the nonemployee individuals with whom Mr. Frankel talked on the telephone qualify as clients for the purposes of section 280A(c)(1)(B).

Both the Ninth Circuit in *Green*, and the Sixth Circuit in *Cousino v. Commissioner*, 679 F.2d 604 (6th Cir. 1982), affg. T.C. Memo. 1981–19, have now held that section 280A(c)(1)(B) does not permit the home office deduction where clients do not physically visit the home office. Although consistent with our holding in *Cousino*, these decisions are at variance with our holding in *Green*.

The Ninth Circuit divided its *Green* opinion into separate parts entitled, respectively, "The Plain Language of the Statute," and "Legislative History." In its discussion of the legislative history of section 280A, the Ninth Circuit noted that Congress enacted the section to resolve a dispute between the IRS and this Court over home office deductions. The IRS had advocated that deductions be allowed only if the office was required by the employer, while the Tax Court had allowed the deductions if the home office was "appropriate and helpful." *Green v. Commissioner*, 707 F.2d 404, 407; see compilation of cases cited therein on this point. The Circuit Court went on to say that "In enacting section 280A, Congress demonstrated that it was not concerned solely with the need or usefulness of a home office. Instead, it intended that deductions correspond to business use of the home resulting in *substantial* expense to the taxpayer." (Emphasis supplied.)

In looking at the other parts of section 280A(c) which also allow home office deductions (i.e., sec. 280A(c)(1)(A) and (C)), the Circuit Court observed that "The other sections that allow deductions support the idea that Congress sought to tie deductions to taxpayer expense. Section 280A(c)(1)(A) allows a deduction if part of a home is used as the principal place of a taxpayer's business. Section 280A(c)(1)(C) provides a deduction for an unattached structure that is used exclusively and regularly for business purposes." The Court went on to say that "We trace in both sections the notion that deductions will

be allowed when a taxpayer is likely to have incurred substantial expense in converting part of a home into a place of business."

If "substantial expense" were all that were involved in the case before us, the petitioners would be safely home, because without doubt, the total dedication by petitioners of a full-sized room in their home to exclusive office use entailed substantial expense. The petitioners bought their home in large measure because it contained a room which they could use as an office, and they furnished the room with the previously described business paraphernalia solely for office use. This entailed substantial expense.

Nevertheless, the Ninth Circuit ultimately concluded "that Congress intended section 280A(c)(1)(B) to apply to offices *actually visited by taxpayer clients*" (emphasis supplied), and we now agree. The Ninth Circuit read the plain language of the statute and concluded, as we now conclude, that it is susceptible of no other construction than that "the office be *used by clients* as a place of business for meeting or dealing with the taxpayer. Ordinarily, one cannot use a room unless one has physical contact with it." 707 F.2d at 406; emphasis in original. In the case before us, clients could just as easily have dealt with Mr. Frankel had Mr. Frankel spoken from his bedside or kitchen table, since extensions of the Times line were located there as well as in the home office. Such dealing would not justify the home office expense deduction.

Mr. Frankel, the editorial page editor of one of the world's great newspapers, undoubtedly knows the frustrations of having plain language ambiguously construed. Upon reflection, we must agree with the Ninth Circuit that it would be inappropriate to read into section 280A(c)(1)(B) any meaning other than that plainly intended by Congress, namely, that the client must physically use the home office in meeting or dealing with the taxpayer. In short, we are no longer willing to treat the statute as though subparagraph (B) reads: "(B) as a place of business which is used by the taxpayer in meeting or dealing with patients, clients, or customers," when in fact the words of the statute say just the opposite. As appropriately said by Judge Chabot, dissenting in *Green* at page 445, "One may agree with, or quarrel with, the [*Green*] majority's view of

the statute, but that is not what the Congress wrote and enacted."

In *Cousino v. Commissioner*, 679 F.2d 604 (6th Cir. 1982), the Court denied a home office deduction to a high school teacher who graded papers and called parents from an area set aside in his trailer home. The Court ruled that the taxpayer had not shown qualifying use of the area in his home because he had not alleged that any students or parents had visited him at his "home office." 679 F.2d at 605. We note that in so holding the Circuit Court affirmed our holding to the same effect.

To summarize this point, then, we hold that the place of business referred to in section 280A(c)(1)(B) must be physically used by patients, clients, or customers in meeting or dealing with the taxpayer, and the fact that the taxpayer is himself physically present in the home office at the time he talks on the telephone will not suffice. Consequently, we will no longer follow the holding of our decision in *Green v. Commissioner*, 78 T.C. 428 (1982), revd. 707 F.2d 404 (9th Cir. 1983).

For the year 1978, petitioners also claimed the home office deduction under section 280A(c)(1)(A), the provisions of which are reproduced in note 2, based upon the use of the home office by Tobia Frankel as her principal place of business.

As previously recited, Mrs. Frankel entered into a written contract with the Office of the Comptroller of the Currency on January 26, 1978, to provide a study pertaining to the effect of 12 U.S.C. section 84 on centrally planned economies. Under the terms of that contract, Mrs. Frankel was to deliver the study by March 1, 1978. Based upon these facts, respondent contends that Mrs. Frankel's use of the home office in 1978 was limited to 35 days, and respondent is willing to concede to petitioners an aliquot portion of the claimed 1978 home office expenses proportionate to the alleged 35-day use by Mrs. Frankel. Thus, respondent concedes $160.74 of the entire $1,676.38 claimed by petitioners as home office expense for the entire year 1978. Respondent cites no authority to support his pro rating approach.

In his brief, respondent states that he "does not dispute the fact that Petitioner Tobia Frankel meets all the statutory criteria set forth in section 280A with respect to that portion of the taxable year 1978 (35 days) that she was employed by the Comptroller of the Currency." We therefore understand the

dispute on this issue to be limited to the narrow question of whether the petitioner should get the deduction based upon Mrs. Frankel's use of the home office for the entire year or for only 35 days as contended by the respondent. We think respondent's position on this point is without merit.

The record in this case makes it clear that Mrs. Frankel's business was that of freelance, technical writer, and not that of an individual employed to do piece work for 35 days, as respondent would have us hold.

We agree with petitioners' assertion on brief that respondent's "concession necessarily implies that the Respondent concedes that the expenses incurred in maintaining the home office were ordinary and necessary business expenses within the meaning of Code sec. 162 and that Mr. Frankel's business use of the home office in 1978 does not preclude Mrs. Frankel claiming a home office deduction, whether or not Mr. Frankel's business use qualified under sec. 280A(c)(1), and that it is not necessary to allocate the home office expenses between Mr. and Mrs. Frankel." We have previously detailed the work Mrs. Frankel performed, both during the 35-day period and also before and after that period, all in 1978.

On brief, respondent expends considerable energy in vigorously renewing his objection to the Court's admission into evidence of certain correspondence between Mrs. Frankel and an individual in the Comptroller's Office on the ground that such correspondence was inadmissible hearsay or evidence barred by the parole evidence rule because it was offered by petitioners to vary the terms of a written contract. But regardless of the question of the admissibility of such correspondence, Mrs. Frankel's testimony regarding the activities in which she engaged with regard to the work she performed for the Comptroller of the Currency throughout the entire year and upon which, together with the contract itself, we have based our findings of fact on this issue, was entirely credible. Mrs. Frankel did substantial work on the study in 1978 outside respondent's 35-day procrustean bed. We are convinced that the home office expense deduction, as claimed by petitioners for 1978 and based upon Mrs. Frankel's year-long activities, should be allowed. We therefore so hold.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

Reviewed· by the Court.
SHIELDS, *J.*, dissents.

----

WILBUR, *J.*, concurring: I concur with the majority opinion for the same reasons expressed in my dissenting opinion in *Green v. Commissioner*, 78 T.C. at 439.

----

DAWSON, *Chief Judge*, dissenting: Based upon both the doctrine of judicial restraint and the merits of this case, I respectfully dissent.

We have previously acknowledged that adherence to the doctrine of stare decisis is important because of the need for continuity in the law and for satisfaction of taxpayers' reasonable expectations. *Sylvan v. Commissioner*, 65 T.C. 548, 555 (1975), citing· *Helvering v. Haddock*, 309 U.S. 106, 119 (1940). See *Alex v. Commissioner*, 70 T.C. 322 (1978), affd. 628 F.2d 1222 (9th Cir. 1980). While I do not suggest that we are unable to overrule our holding in *Green v. Commissioner*, 78 T.C. 428 (1982), revd. 707 F.2d 404 (9th Cir. 1983),[1] I disagree with the majority's quick willingness to do so.

The facts of *Green* are similar to those in this case, except that petitioners. may be even more favorably situated than the taxpayers were in *Green*.[2] However, the majority waste no time in premising their present opinion on the same. arguments we rejected in *Green* in 1982. After today's opinion, will taxpayers preparing 1983 returns take a position consistent with *Green* in the hope that the next time we consider this issue, and the judicial winds fill our interpretive sails with sufficient "higher wisdom,"[3] we will once again reverse course? If such be the case, I choose to steer a more consistent course. I think it does harm to the integrity of our decisional

----

[1]The reversal by a Circuit Court of Appeals provides such an opportunity. See, e.g., *Rowan v. Commissioner*, 22 T.C. 865 (1954).

[2]The Frankels used their home office much more extensively on a regular basis than did the taxpayers in *Green*.

[3]See majority opinion at p. 323.

process in cases such as this to so quickly reverse ourselves, as the majority have done. The Ninth Circuit's opinion in *Green* is based upon nothing more than what we fully and recently considered.[4] To justify changing our holding now strikes me as requiring stronger reasons.

Notwithstanding the above, I agree with our rationale in *Green*, and I would hold for petitioners on this issue. Mr. Frankel clearly "meets" four of the six criteria listed by the majority as necessary for qualification under section 280A(c)(1)(B). The only remaining question is whether the home office is used by the Times' clients or customers in meeting or dealing with Mr. Frankel.[5]

The majority follow the Ninth Circuit's opinion in *Green* in holding that the petitioners do not meet the statutory requirement. Yet the majority seem to think that the Court of Appeals' review of the legislative history to section 280A is inexact. The Ninth Circuit summarizes its view as follows:

We conclude that Congress intended section 280A(c)(1)(B) to apply to offices actually visited by taxpayer clients. It is far more likely that a taxpayer who expects *regular client visits will sustain expenses in making the home suitable for business use. Green, on the other hand, has never asserted that he sustained major expense in setting aside a room for phone calls. Allowing a deduction here would ignore Congress's goal of tying deductions to expenses.* [707 F.2d at 407; emphasis supplied.]

The majority admit, however, that Mr. Frankel's expenses *were* significant and then state that "If 'substantial expense' were all that were involved in the case before us, the petitioners would be safely home, because without doubt, the [use] by petitioners * * * entailed substantial expense."[6] Nevertheless, the majority do not thereafter enlighten us as to what the Ninth Circuit meant by the above quote.

---

[4]The majority purport to also follow *Cousino v. Commissioner*, 679 F.2d 604 (6th Cir. 1982), affg. a Memorandum Opinion of this Court, as being consistent with the Ninth Circuit's decision in *Green*. I would not give such weight to *Cousino*. See discussion *infra*.

[5]The majority appear misled as to what is the main question before us. On page 326 of the majority opinion, it is stated that the question is one of whether the telephonic contacts satisfy the "meeting or dealing" requirement of subsec. 280A(c)(1)(B). They then separate this issue into whether petitioners have met two requirements whereby "meeting or dealing" is one of these requirements to determine whether the Frankels were "meeting or dealing." The majority then focus solely on the "use" requirement of subsec. 280A(c)(1)(B) in reaching their decision. This treatment of the single statutory phrase "used by patients, clients, or customers in meeting or dealing" is, to say the least, confusing.

[6]Majority opinion at p. 328.

Congress enacted section 280A for two reasons: (1) To prohibit business deductions for personal, living, and family expenses where there are little or no incremental costs associated with the business of the home; and (2) to provide objective standards for determining the allowability of a deduction for the business use of the home. See *Green v. Commissioner*, 78 T.C. at 431, 434-435.

Congress' first objective was satisfied by the "exclusive use" and "regular basis" tests. Hence, no deduction is allowed for costs associated with that portion of a dwelling unit used for personal as well as business purposes,[7] such as the costs incurred by a lawyer entertaining clients in his living room.

The three requirements of subsection 280A(c)(1)(A), (B), and (C) were directed at Congress' goal of providing objective standards to replace our prior subjective "appropriate and helpful" standard under section 162(a). See *Green v. Commissioner*, 78 T.C. at 431. Merely incurring substantial expenses (and thus meeting Congress' first objective) is not sufficient, by itself, to qualify for a home office deduction. One must also meet the objective standards, which are not necessarily aimed at substantiality. Therefore, I do not agree with the Ninth Circuit's interpretation of the legislative history.

We must turn then to the Court of Appeals' other rationale: the "plain" language of the subsection allows a deduction for a home office only when actually visited by the taxpayer's clients. The majority adopt this statement that subsection 280A(c)(1)(B) requires that "the office be *used by clients* as a place of business for meeting or dealing with the taxpayer. Ordinarily, one cannot use a room unless one has *physical contact* with it."[8]

The majority opinion seems to focus here not on whether the clients were "dealing" with Mr. Frankel, but rather on whether the home office was *used* by the clients.[9] In *Green* we

---

[7] See S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 186; H. Rept. 94-658, (1976), 1976-3 C.B. (Vol. 2) 695, 853. See also sec. 1.280A-2(c) and (g), Proposed Regs.

[8] Majority opinion at pp. 328-329 (second emphasis supplied).

[9] Majority opinion at pp. 323, 326, 328, 329. See note 5 *supra*. If this case turns solely on whether the calls constitute "dealing," the majority have resolved the issue:

"In the case before us, clients could just as easily have *dealt* with Mr. Frankel had Mr. Frankel spoken from his bedside or kitchen table * * *. *Such dealing* would not justify the home office expense deduction. [Majority opinion at 328; emphasis supplied.]"

Even forgiving the majority's admission that receiving telephone calls from clients is "dealing," their argument misses the mark. It is irrelevant how many calls are placed or received outside of the home office. The statute does not require that *all* of the business be transacted exclusively in

considered the entire phrase "used by patients, clients, or customers in meeting or dealing," and I see no reason why the majority now should change its meaning. Even focusing solely on the proper interpretation of "use," as stated in *Green*, I think the "used by clients" requirement is satisfied when the client initiates the call.[10] There is no requirement of "physical contact" in the statute or legislative history.

The only other case dealing with the issue of whether telephonic communication satisfies the statutory requirements is the Sixth Circuit's decision in *Cousino v. Commissioner, supra*. In my judgment, *Cousino* provides weak support for the majority's view. We decided that case in a Memorandum Opinion before we fully addressed the issue in *Green*. The Sixth Circuit summarily affirmed without oral argument. Moreover, the Court of Appeals based its affirmance on the following:

Given these uncontroverted facts, it is apparent that the petitioner is not entitled to a deduction under 26 U.S.C. sec. 280A(c)(1)(A), (B) or (C) *because petitioner has not established that he uses the home office for the convenience of the school.* [679 F.2d at 604; emphasis supplied.]

Thus, since the taxpayer in *Cousino* failed to meet the fundamental requirement contained in the flush language of section 280A(c)(1), that Circuit Court's statements regarding the requirements of subsection 280A(c)(1)(B) were unnecessary and superfluous.[11] That being the case, *Cousino* provides weak support for departing from our opinion in *Green*. In my view, Mr. Frankel has met the six factors set out on page 437 of our *Green* opinion. As long as these six factors, which express both the letter and spirit of congressional intent, are present, I think the home office deduction should be allowed. The rationale of the majority opinion herein does not convince me otherwise.

FAY, STERRETT, GOFFE, KÖRNER, and SWIFT, *JJ.*, agree with this dissent.

---

the office but rather that all of the transactions in the office be exclusively business related.

[10]*Green v. Commissioner*, 78 T.C. 431, 436 n. 11 (1982). See also the concurring opinion of Judge Sterrett therein.

[11]In addition, the Sixth Circuit's statement that there existed no case law whatsoever for the taxpayer's position in *Cousino* is at least curious since our opinion in *Green* was filed months before the date of the *Cousino* decision.