JOHN A. AND JUDY A. FOWLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fowler v. Commissioner
Docket Nos. 28383-90, 17542-91[1]
United States Tax Court
T.C. Memo 1993-295; 1993 Tax Ct. Memo LEXIS 296; 66 T.C.M. (CCH) 45; July 8, 1993, Filed *296 Decision will be entered under Rule 155. For petitioners: Denver G. McCarty (specially recognized). For respondent: Audrey M. Morris. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax under section 6661 for the calendar years 1986 and 1987 in the amounts as follows: Addition to Tax
Year
Deficiency
Sec. 6661
1986
$ 8,090
$ 2,023
1987
6,653
1,663
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Some of the issues were disposed of by agreement of the parties, leaving for decision: (1) The proper method of determining the amount to be deducted by a sole proprietorship owned by petitioners for use of a part of a building owned by petitioners and petitioners' income from the rental of the balance of the building and some of the grounds surrounding the building; (2) whether petitioners are entitled to a bad debt deduction under section 166 for 1986 with respect to a foreclosure on property securing a purchase money *297 note of their wholly owned corporation, which became bankrupt; and (3) whether petitioners are entitled to a net operating loss carryover to the year 1987 from the year 1986. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners resided in Burleson, Texas, at the time of the filing of their petitions in these cases. On September 24, 1987, petitioners filed their 1986 joint Federal income tax return with the Internal Revenue Service Center at Austin, Texas. On June 20, 1988, petitioners filed their 1987 joint Federal income tax return with the Internal Revenue Service Center at Austin, Texas. Petitioners' 1986 and 1987 Federal income tax returns were prepared by Clement Bailey (Mr. Bailey). Mr. Bailey is not an attorney or certified public accountant. During 1986 and 1987 petitioners owned all the stock of a corporation, Kimbro Express, Inc. (Kimbro). This corporation was operated by Mr. Fowler. During 1986 petitioners also owned all the stock of a corporation, JFT, Inc., d.b.a. John Fowler Trucking, Inc. (JFT). Mr. Fowler also operated this corporation until it became bankrupt in early 1986. Kimbro and JFT were incorporated under *298 the laws of the State of Texas. However, neither corporation has ever filed a Form 1120, U.S. Corporation Income Tax Return. The income and expenses of each corporation were reported on a separate Schedule C of petitioners' 1986 Federal income tax return and the income and expenses of Kimbro were reported on a separate Schedule C of petitioners' 1987 Federal income tax return. [2]
Petitioners also owned and operated a sole proprietorship, Burleson Diesel Repair (Burleson), and a painting contracting business. The Burleson income and expenses for 1986 were reported on a separate Schedule C and the income and expenses of Burleson and the painting contracting *299 business in 1987 were reported on separate Schedules C. Petitioners owned a building. The business of Burleson Diesel Repair was operated in the building owned by petitioners. A part of the building petitioners owned was rented to an unrelated business, Rose Way. Also Kimbro and JFT had offices in the building petitioners owned. Petitioners reported the income and some expenses from operation of the building on the Schedules C of the other businesses. [3]
*300 The building petitioners owned was a 6,000-square-foot building with a loft which was 300 square feet. The building was 100 by 60 feet and a portion of the building 25 by 60 feet was office space used by Kimbro, JFT, Burleson, and other businesses of petitioners. A space in the building which was 75 by 60 feet was used by Burleson as a repair shop in the diesel repair business which was its activity. The 300-square-foot loft was above a portion of the 6,000 square feet of the building. This loft was rented to Rose Way. If employees of Rose Way had to sleep on the premises, they used this loft for sleeping. Petitioners also rented a part of the land around the building to Rose Way as a storage area and parking area for vehicles owned and operated by Rose Way. The lease with Rose Way began in 1986 and continued throughout the year 1987. The rental paid by Rose Way to petitioner in 1986 and 1987 for both the land used for the storage and parking of its vehicles and the 300-square-foot loft area was approximately $ 1,000 a month. The rental payments received by petitioners from Rose Way were sometimes deposited into the bank account petitioners maintained under the name of Burleson. *301 Petitioners kept several different bank accounts under the names of different business operations. Although petitioners had several different bank accounts under the names of the different businesses they operated, they often paid expenses related to one of the businesses with funds from an account other than the one in the name of that business. Petitioners generally would use whichever account had the most funds at the time to pay expenses regardless of the business to which the expenses were related. Respondent in her notices of deficiency to petitioners recomputed the income of Burleson by disallowing as deductions in computing Burleson's income on a Schedule C all amounts which Burleson had paid in connection with the building and allowing as a deduction to Burleson a reconstructed rent of $ 6,122 for 1986 and $ 16,431 for 1987. The rental allowances to Burleson were included in petitioners' income from their rental activity in each year here in issue which respondent computed on a Schedule E. These reconstructed rentals were added to the rentals determined to be appropriate from JFT and Kimbro, and the actual rentals received from Rose Way to arrive at petitioners' total *302 Schedule E rental income for each year. Respondent then determined the total expenses of the building including: Insurance, mortgage interest, janitorial services, property taxes, waste disposal, utilities, and depreciation, and allowed these as deductions in each year to petitioners on the Schedule E. On June 20, 1985, a note with JFT as the borrower to Burleson State Bank was signed by Mr. Fowler and was also personally endorsed by him. The purpose of the note was shown as the purchase of a truck and the amounts shown were $ 81,338.94 for the truck purchase and a finance charge of $ 31,586.46, making a total payment of $ 112,925.40 payable over 60 months at $ 1,882.09 a month. The security agreement showed JFT as the debtor and that the debt secured was a purchase money note for a "1984 Peterbilt Conventional" and a "1978 American Van S/T #31657". This equipment was listed as the security for the note. At the bottom of the security agreement attached to the note the statement was made that the borrower is a "Partnership, Corporation or other organization". In the following paragraph the statement is made that the collateral will be acquired by the borrower with the proceeds *303 of the loan. Further in the agreement there is a statement that the borrower will use the collateral primarily for business purposes. This security agreement was signed by Mr. Fowler. The Texas certificate of title to both the van and the Peterbilt truck was shown as being in the name of John Fowler of Burleson, Texas. On February 20, 1986, JFT filed a voluntary petition in bankruptcy under chapter 7. One of the debts listed on the papers attached to the petition in bankruptcy was the note to the Burleson State Bank executed for the purchase of the 1984 Peterbilt truck and the 1978 American van. Among the assets of the corporation listed on papers attached to the bankruptcy petition were the 1984 Peterbilt truck and the 1978 American van. Mr. Fowler signed the petition in bankruptcy on behalf of JFT. After the filing for bankruptcy, at a date not disclosed in the record, the stay on collection of the note given by JFT to Burleson State Bank for the purchase of the 1984 Peterbilt truck and the 1978 American van was lifted so that the bank could foreclose on these items and the bank did so foreclose. Petitioner did not pay any amount under his guarantee of the note for the *304 purchase of the Peterbilt truck and the American van, but the truck and van were sold and the proceeds used to pay the note. Petitioners claimed no deduction in 1986 or 1987 with respect to the foreclosure on the Peterbilt truck and the American van. However, at the trial, petitioners made a claim that they should be allowed a bad debt deduction for the value of the Peterbilt truck and the American van registered in Mr. Fowler's name upon which the Burleson State Bank foreclosed to pay the purchase money note. OPINION It is petitioners' position that Burleson is merely a business of petitioners, as is their rental activity, and that the building petitioners own is used partially in Burleson's business and partially in the rental business. Petitioners take the position that 75 percent of the building is used in Burleson's business and, therefore, on the Schedule C computing Burleson's income 75 percent of the expenses of the building should be deducted. Petitioners contend that no so-called rent should be deducted by Burleson or added into the rental activity of petitioners on Schedule E since both are part of petitioners' business and "a person does not pay rent to himself". *305 Petitioners contend that only 25 percent of the costs with respect to the building should be deducted from the rental income since only 25 percent of the floor space of the building was rented. It is difficult to follow respondent's argument. The concluding portion of respondent's argument states "that obviously they [petitioners] are not entitled to reduce their diesel repair business income by expenses related to their rental activity nor are they permitted to reduce rental income by expenses which are associated with the petitioners' non-rental business". This statement misses the point petitioners make. The point petitioners make is that the deduction for Burleson's cost of doing business includes the costs related to the building in which it operated to the extent those costs are applicable to its operations. At the trial the Court inquired as to why it mattered how the expenses applicable to the building were divided between two businesses both of which were sole proprietorships of petitioners. Since both the rental income and the diesel repair business income were petitioners' income, it appeared that both the method used by petitioners and that used by respondent for *306 computing the deduction for expenses of the building would result in the same income to petitioners. Respondent's reply was that the method used made a difference in the amount of self-employment taxes petitioners would pay on their self-employment income. The parties stipulated that petitioners agree that they are liable for self-employment taxes on their corrected net self-employment income as determined by the Court. On brief respondent argues that section 469(c)(2) provides that any rental activities conducted by an individual taxpayer are to be considered passive activities and that under section 469(a) an individual's net losses from passive activities are limited to the extent of passive income. The provisions of section 469 of the 1986 Code were enacted by section 501 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2233. Section 501(c) provides that the amendments made by section 501 are effective for taxable years beginning after December 31, 1986. 100 Stat. 2241. Therefore the passive income rules are not applicable to the year 1986. Respondent's computation of petitioners' rental income on Schedule E for the calendar year 1987, including considering in *307 gross receipts from rentals the $ 16,431 of "rent" respondent determined petitioners should have received from Burleson, and allowing petitioners all deductions with respect to the building, is $ 21,111. The expenses which respondent determined were applicable to the building and which petitioners agree are the total expenses of the building were $ 24,997. If we accepted petitioners' position in its entirety that 75 percent of the expenses of the building were expenses deductible by Burleson and the remaining 25 percent of the expenses were deductible by the rental activity, the result would be $ 29,677 of rental income, less $ 6,249 of expenses, or rental income of $ 23,428, which would result in slightly more Schedule E rental income than respondent determined petitioners received and apparently less income from the diesel repair business of Burleson. Since the parties have argued the issue of how to determine the separate income of Burleson and petitioners' rental business as affected by the costs with respect to the building used by both, we will decide this issue on the basis of the facts in this record in the event it does make a difference in petitioners' tax liability. *308 Petitioners at the trial argued in effect that you could not pay rent to yourself and since Burleson used the building, and the rental activity used the building and both were petitioners' businesses, the appropriate way to separately compute the income of each such business was to allocate the costs with respect to each activity on the basis of the space in the building used by each activity. Since petitioners filed no brief, their entire argument is the argument made at the trial. Respondent in her brief cites no authority in support of the method of determining the income of each of petitioners' businesses in the notices of deficiency. Respondent's primary argument is that the Court should give no credence to the testimony of the witness for petitioners who testified to the sketch of the building and to the activities operated in the building. This witness was Mr. Clement Bailey. Respondent argues that since Mr. Bailey "must have made intentional errors on petitioners' tax returns, has recently been convicted of violating IRC section 7206(1), and has been permanently enjoined from preparing income tax returns", no credence should be given to his testimony. If Mr. Bailey's *309 testimony were controversial, the Court might consider these facts in its evaluation of the evidence. However, Mr. Bailey testified that he and the revenue agent who investigated petitioners' returns had gone through the building together and that he had given her roughly the same sketch of the building to which he testified. He referred several times to the measurements of the building and the other aspects of the building which he had observed together with respondent's revenue agent. Respondent's counsel recognized that Mr. Bailey had assisted petitioners during the investigation of their income tax liability for the years here involved and acknowledged that the revenue agent referred to by Mr. Bailey was the revenue agent investigating the returns. Respondent's counsel at no time questioned that the same sketch to which Mr. Bailey testified had been given to and approved by the revenue agent jointly with Mr. Bailey and did not offer the testimony of the revenue agent in rebuttal. From the evidence, we conclude that the factual testimony of Mr. Bailey with respect to the dimensions of the building and the portion of the building used by Burleson in its diesel repair business *310 and the portion of the building used by the various business operations of petitioners as office space and the portion rented to Rose Way and the corporations owned by petitioners, is correct. The difficulty we have with the 75 percent amount arrived at by Mr. Bailey is that we have little information about the use of the grounds surrounding the building other than that a portion of the grounds was rented to Rose Way. We do not know what portion was rented to Rose Way nor do we know what activities of petitioners or the two corporations Kimbro and JFT might have used any part of the grounds. If we merely consider the 4,500 square feet used by Burleson as a repair shop as compared to the 1,500 square feet used for office space, it would appear that Burleson used 75 percent of the building and the office activities used 25 percent. Although Burleson's office along with other offices was in the office part, we have no allocation of the office space. Also, in figuring the 75 percent, no consideration was given to the 300-foot loft. If the loft is considered in the square footage of the building, a total of 6,300 square feet is in the building. On this basis, Burleson would have *311 used only about 71 percent of the building space. The exact proportion used by Burleson may not be precisely computable from Mr. Bailey's testimony. However, we agree that the proper method of determining the amount of expenses to be deducted in computing Burleson's income on Schedule C for the expenses of the building space in which the business was conducted and grounds area, if any, used by Burleson is by allocating to Burleson such proportion of expenses of the property as the space it used bears to the total space. The proper amount to be allocated to the Schedule E rental expenses should be on the basis of the percentage of the property used for rental purposes. It has long been accepted that separate Schedules C are to be filed for different businesses operated by the same taxpayer or, where it is a rental business, a Schedule E for the rental activity and a Schedule C for the other business. See Rev. Rul. 81-90, 1981-1 C.B. 572-573, in which respondent points out that the instructions for preparation of Schedules C provide that, if a person operates more than one business or practices a profession and operates a business, a separate *312 Schedule C must be completed for each business. In view of our conclusion that petitioners' system of determining the amount to be deducted on the Schedule C in computing Burleson's income and on Schedule E in computing petitioners' income from the rental business is the appropriate one, it is necessary for us to determine as best we can the percentage of the costs paid with respect to the property appropriate for each operation in each of the years here in issue. Considering the fact that all expenses other than utility costs and depreciation appear to be applicable to both the building and the grounds, we conclude that 50 percent of the costs with respect to the building and grounds are allocable to Burleson's business and 50 percent to the rental business. One-half of the expenses applicable to the building and grounds would be one-half of the $ 31,478 of total expenses for the property computed by respondent for the year 1986 and one-half of the $ 24,997 of total expenses for the property computed by respondent for the year 1987. Respondent argues that petitioners "apparently" would not substitute the deduction of the expenses of the use of the property by Burleson for the *313 rental amount. We do not so interpret petitioners' position. In any event, one-half of the expenses paid with respect to the property should be deducted in computing the Burleson income in each year and no rental deduction allowed to Burleson in either year. The deduction allowed for rent by respondent should be added back to Burleson's income as computed by respondent on Schedule C, and the rents received by petitioners as computed should be reduced by the amount of rents respondent determined petitioners had received from Burleson in each of the years 1986 and 1987 in computing the Schedule E income. Only one-half of the building's expenses should be allowed as a deduction on Schedule E. Respondent has cited no case, nor have we found one, where a taxpayer who operated more than one business as a sole proprietorship in a building owned by that taxpayer should have one such business pay "rent" to another. It appears to us that all the businesses belonged to petitioners, who owned the building and grounds, and the costs of operating the property should be allocated on a reasonable basis to each such business. In determining the amount of the expenses of a home which may be *314 deducted as a business expense for use as a home office, we have uniformly permitted only an allocable portion of the expenses of maintaining the building to be deducted and not a computed rental value. See Frankel v. Commissioner, 82 T.C. 318 (1984); Hefti v. Commissioner, T.C. Memo. 1993-128. We have in cases assumed that an owner of property could not pay "rent" on the property to himself but could deduct the expenses such as interest and depreciation on the property where it was used for business purposes. See Machen v. Commissioner, T.C. Memo. 1966-193. Treating these cases as mere factual ones, it is our view that factually it is appropriate here to allocate the expenses paid with respect to the property between Burleson and the rental operation of petitioners on a space-used basis. We recognize, of course, that in addition to Burleson and the two corporations owned by petitioners who were renters, as well as Rose Way as a renter, there apparently were some other minor usages of the building and perhaps the grounds. However, considering the record as a whole, we consider these other *315 usages sufficiently minor to be encompassed in the 50-50 split of the expenses which we consider appropriate. Respondent on brief states that petitioners did not raise the contention of the split of expenses 25 percent, 75 percent, until the trial. The record shows that petitioners filed their petitions pro se and the only allegation made in either petition was that all disallowances are fully disputed as well as all penalties and that petitioners have records adequate to substantiate the deductions disallowed. Since respondent did not move for a further and better statement of petitioners' position, we view these allegations as sufficient to support a contention that a disallowance of expenses paid as shown on Burleson's Schedule C with respect to the building and grounds was improper and therefore consider this issue was properly raised by the pleadings. The record shows that petitioners made no effort to pay the expenses of each of their business operations from the bank account maintained for that business. The record does not show how much of the expenses of the property were paid from Burleson's bank account in 1986 but does show that more than one-half of the expenses *316 of the property were paid from that account in 1987. In any event, because of the manner in which petitioners paid the expenses of their various businesses this fact is irrelevant. The issue with respect to a claimed loss in connection with the foreclosure on the 1984 Peterbilt truck and the 1978 American van was raised for the first time at trial. The Court permitted petitioners to proceed with the trial of this issue and directed that the petition be amended to properly allege this new issue. Even though petitioners did not in fact file amended petitions we have decided to consider this issue on its merits. From the facts we have found, we conclude that even though for some reason undisclosed in the record title to the 1984 Peterbilt truck and 1978 American van was put in the name of John Fowler, this equipment belonged to JFT. The note for the purchase of the equipment was the note of JFT although it was personally endorsed by Mr. Fowler. The security agreement stated that the equipment purchased with the note was purchased by a "Partnership, Corporation or other organization" rather than an individual and that it was for a business use of the purchaser. There was also a *317 statement that the proceeds of the note were to be used for the purchase of the equipment and the security for the note was the equipment purchased. When JFT filed its bankruptcy petition, the unpaid portion of the note was listed as a liability and the 1984 Peterbilt truck and 1978 American van were listed as assets of JFT. Mr. Fowler signed the bankruptcy petition on behalf of JFT. We assume that Mr. Fowler would not have signed a petition listing an asset of JFT which JFT did not own. Because we have concluded that the 1984 Peterbilt truck and 1978 American van were property of JFT and no loss occurred to Mr. Fowler personally when the Burleson State Bank foreclosed on this property to pay JFT's note, we do not reach the various other arguments made by the parties with respect to whether otherwise Mr. Fowler would be entitled to deduct any loss in connection with the transaction. It appears from the items conceded by petitioners and our holding with respect to the items that remained in issue that petitioners will have no 1986 loss to carry over to 1987 and therefore the issue of whether petitioners properly might carry the amount over to 1987, if in fact there was a loss, *318 rather than carry the loss back to years prior to 1986, is moot. However, we will comment that petitioners offered no evidence that they had elected to carry the loss over from 1986 to 1987 rather than back to years prior to 1986. Apparently petitioners recognize that the concessions they made result in there being no 1986 loss to carry over to 1987 although they did not specifically concede the issue. Petitioners offered no evidence with respect to the addition to tax under section 6661 for each of the years here in issue as determined by respondent. We assume petitioners concede this addition to tax if the understatement of income is sufficient for this addition to tax to be applicable in each year. In any event, petitioners have made no showing of error in respondent's determination of the addition to tax under section 6661 unless the understatement of income after a recomputation is insufficient to have the section 6661 addition apply. Respondent in her brief stated that she improperly included a $ 929 adjustment for FICA tax in the deficiency of petitioners for the year 1986. Respondent stated on brief that the $ 929 amount resulted from the fact that petitioners' employer, *319 "one of their wholly-owned corporations", did not properly withhold and pay employment taxes attributable to amounts paid to petitioners by such corporation and that the additional amount was computed in accordance with sections 3101 and 3121(d)(1), a part of subtitle C of the Code. Petitioners made no mention of the $ 929 amount of FICA tax, so we consider this to be as respondent states at the conclusion of her brief, a concession "that the correct 1986 deficiency before the Court is $ 7,161, and the correct addition to the tax under I.R.C. section 6661 is $ 1,791". It is these amounts of deficiency and addition to tax which should be considered by the parties in their recomputation in accordance with concessions made by petitioners and the opinion of this Court. Decisions will be entered under Rule 155. Footnotes
1. These cases were consolidated for trial, briefing, and opinion.↩
2. One of the issues petitioners have conceded is that respondent correctly computed separately the income of Kimbro and JFT on a corporate basis and allocated certain amounts to the rental activity of petitioners as rental payments by the corporations to petitioners for a building petitioners owned but a part of which was used for office space by the two corporations.↩
3. One of the issues that petitioners have conceded is that the rental activity should have been reported on Schedule E and that amounts paid by Kimbro and JFT in connection with the building should have been reported by petitioners on the Schedule E as rental income and deducted in computing the corporate incomes as rentals paid instead of being deducted by their corporations as part of the expenses of the building operation. Petitioners have also conceded that the rental payments received from Rose Way were properly reportable on Schedule E as rental income.↩